999 F.2d 1526
 Rosa HOBBS, Plaintiff-Appellant,
v.
E.E. ROBERTS, Harry Roberts, Shirley Roberts, City of
Oglethorpe, Georgia, Defendants,
Georgia Department of Transportation, Jerry Gossett, Tony
Chambers, Archie C. Burnham, Defendants-Appellees,
Ronald K. Colbin, Defendant.
 No. 92-8139.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 3, 1993.
 
 Warren N. Coppedge, Jr., Mitchell, Coppedge, Webster, Bisson and Miller, P.C., Dalton, GA, for plaintiff-appellant.
 Henry C. Tharpe, Jr., Joy H. Sawyer, Kinney, Kemp, Pickell, Sponcler & Joiner, for defendants-appellees.
 Ronald C. Goulart, Fort Oglethorpe, GA, for City of Oglethorpe.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before HATCHETT, EDMONDSON and BIRCH, Circuit Judges.
 EDMONDSON, Circuit Judge:
 
 
 1
 In this engineering malpractice case, Rosa Hobbs appeals from a judgment notwithstanding the verdict (JNOV) in favor of defendants. Because the course of proceedings shows Hobbs sued defendants in both their individual and official capacities, and because the Eleventh Amendment bars only official capacity suits, we affirm in part and vacate in part.
 
 I. Background
 
 2
 Rosa Hobbs, a Tennessean, was hit by a truck when she crossed a seven lane street in Ft. Oglethorpe, Ga. Hobbs crossed when the traffic signals indicated she should have, but the signal was timed too quickly to allow pedestrians to cross safely. The oncoming vehicle struck and severely injured Hobbs.
 
 
 3
 Hobbs brought this diversity action against the "Georgia Department of Transportation and its Agents, Jerry Gossett, Tony Chambers, Archie C. Burnham and Ronald K. Colbin." The named people are state and district traffic engineers employed by Georgia Department of Transportation ("GADOT" or "GDOT") and are responsible for the timing of traffic signals. Hobbs claimed that defendants had caused her injuries by negligently engineering the traffic signals.
 
 
 4
 The jury returned a verdict for Hobbs and awarded her $100,000; the district court entered judgment against defendants in the amount of $80,000. Defendants moved for JNOV, asserting, among other grounds, that GADOT had Eleventh Amendment immunity. While the motion for JNOV was pending, Hobbs caused writs of execution to be issued against the assets of GADOT and each of the named defendants.
 
 
 5
 The district court granted defendants' motion for JNOV. Hobbs v. Georgia Dept. of Transp., 785 F.Supp. 980 (N.D.Ga.1991). The district court noted Georgia decisions holding that GADOT may have waived its sovereign immunity in state court by participating in a state liability insurance fund,[1] but ruled that GADOT had not waived its Eleventh Amendment immunity in federal court. Id., 785 F.Supp. at 984-85.
 
 
 6
 The district court also ruled, sua sponte, that the named defendants enjoyed Eleventh Amendment immunity:
 
 
 7
 Here, Plaintiff has sued the individual Defendants only in their official capacity as agents of the GDOT, therefore, Plaintiff is clearly seeking compensation from the GDOT for these agents' actions. Any funds coming from the GDOT to indemnify these agents would have come from the same source as the funds needed to satisfy any judgment against GDOT, if GDOT had not been entitled to immunity. Consequently, because the GDOT is entitled to immunity, the individual defendants are also entitled to Eleventh Amendment immunity in this action. Therefore, the Court also grants Defendants' Motion JNOV as to the individual defendants.
 
 Id., 785 F.Supp. at 986.[2]
 
 8
 Hobbs unsuccessfully moved for reconsideration of the JNOV. Id. The district court ruled that Hobbs's suit sought recovery from state funds only--that the "real party in interest was not the individual defendants, but was the GDOT and its Liability Trust Fund." Id., 785 F.Supp. at 987. The district court based that finding on four grounds:
 
 
 9
 (1) Hobbs offered into evidence, in camera, the State funded insurance policy which covered the individual defendants;
 
 
 10
 (2) Hobbs only referred to the individuals as "agents of GDOT";
 
 
 11
 (3) Hobbs asked for and received an instruction on agency law; and
 
 
 12
 (4) In responding to defendants' post-trial motion to stay enforcement of the judgment, Hobbs "specifically stated that '[she] is secure in the ultimate enforcement of her judgment through the DOAS Trust Fund and agrees to stay enforcement pending resolution of post-judgment issues raised by the Defendants.' "
 
 
 13
 Id., 785 F.Supp. at 988. The district court concluded that "[t]he combination of all these actions clearly shows that Plaintiff was seeking to tap into the Liability Trust Fund if she won a verdict in her favor." Id., 785 F.Supp. at 988-89. The district court was unpersuaded that Hobbs' having filed writs of execution against the individuals demonstrated the intention to recover from them personally. Id., 785 F.Supp. at 989. Hobbs brought this appeal.
 
 II. Issue Presented
 
 14
 We must decide whether the course of proceedings in this case shows that Hobbs sought to recover from the named defendants in their official or their individual capacities, or both.[3]
 
 III. Discussion
 A.
 
 15
 Absent an express waiver, the Eleventh Amendment bars a damages action against a State in federal court. Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). Likewise, the Eleventh Amendment bars federal suits against state officials in their "official capacity" because such actions seek recovery from state funds. Id. The Eleventh Amendment protects no personal assets in "individual" or "personal" capacity suits in federal court. Hafer v. Melo, --- U.S. ----, ----, 112 S.Ct. 358, 362, 116 L.Ed.2d 301 (1991); Gamble v. Florida Dept. of Health & Rehab. Svcs., 779 F.2d 1509, 1518 (11th Cir.1986) ("[T]he Eleventh Amendment provides no bar to recovery of damages against state officers acting in their individual capacities.").
 
 
 16
 Where the complaint is unclear on "whether officials are sued personally, in their official capacity, or both," courts must look to "the course of the proceedings" which will "typically indicate the nature of the liability sought to be imposed." Kentucky v. Graham, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14 (emphasis added); Gamble, 779 F.2d at 1513 ("[T]he question is whether the plaintiff is reasonably seeking relief from the state coffers or from the individual's assets.").
 
 
 17
 Although Hobbs plainly hoped and thought recovery from the Georgia liability insurance fund would be available, we see no good reason to conclude that Hobbs ever sought only to recover from the fund. Most plaintiffs hope the defendants have plenty of insurance to cover a judgment in plaintiff's favor, but that does not mean that plaintiffs restrict their sights only to insurance proceeds if other assets can serve the judgment. We think that Hobbs always left open the prospect of recovering from the named defendants' personal assets.
 
 B.
 
 18
 Based on four specific facts, the district court concluded that Hobbs's suit was exclusively an official capacity action. But we think the course of proceedings shows that Hobbs sued the named defendants in their official and individual capacities.
 
 
 19
 (1) Insurance Policy. Hobbs introduced the insurance contract into evidence, in camera. The district court relied on this fact to show that Hobbs sought to impose official liability only. We guess that the policy was introduced to show that no sovereign immunity defense would bar the suit.[4] But, this purpose does not mean that the individual defendants were sued only in their official capacity.
 
 
 20
 Also, when Hobbs put in the policy, no case law clearly established that coverage under the policy would be available only if defendants were sued in their official capacities; job-related negligence for coverage purposes could arguably encompass individual liability too. And, we know of no law that said that introduction of the policy was, in itself, a waiver of claims against persons in their individual capacities. We see no reason to infer that Hobbs, by introducing the policy, showed that she sought to recover a judgment exclusively from state funds protected by the Eleventh Amendment.[5]
 
 
 21
 (2) "As Agents". Hobbs says that she styled her action "[GADOT], and its Agents ..." to support a respondeat superior theory of liability for GADOT.[6] Appellees stress that the words "and its agents" indicate that this was purely an official capacity action. We note that the caption of pleadings, or even of judgments, shows, by itself, little about the capacity in which defendants are sued in a case. Lundgren v. McDaniel, 814 F.2d 600, 604 & n. 2 (11th Cir.1987).
 
 
 22
 To say in pleadings that someone is an agent is an allegation of fact about the person, but agency is no synonym for a limitation of liability to official capacity, that is, to a public purse. And to assert an agency relationship among two or more defendants--an assertion that could be prudent in an action for several reasons--is not, in and of itself, the same act as asserting that one or more defendants are sued only in their official capacity. When a complaint describes a defendant "as agent" of some governmental entity, that tends to show only that the person is alleged to have acted as something other than a purely private person. See Parker v. Graves, 479 F.2d 335, 336 (5th Cir.1973). But, that idea has little to do with whether the person is sought to be held liable in his individual capacity or in his official capacity. As so many suits on 42 U.S.C. § 1983 have shown us, persons can have individual liability for misconduct as government employees. Plaintiffs are not usually required to designate, with particular words in the pleadings, that they bring their action against defendants in the defendants' individual or official capacities, or both. Cf. Fed.R.Civ.P. 9(a) & 17(b) (the only rules discussing the pleading of "capacity," though a different kind of capacity than the kind at issue here).
 
 
 23
 Hobbs's chosen words most naturally read as a statement of fact consistent with, and essential to, Hobbs's respondeat superior theory of liability for the Georgia Department of Transportation. Hobbs might have said in the caption of her complaint "I sue GADOT and also the following persons who acted for GADOT: Gossett, Chambers, and Burnham" with no different meaning than the words she did use.
 
 
 24
 That the engineer defendants worked for a state agency, as opposed to a private firm, does not rule out the possibility of individual liability for engineering malpractice. To repeat the obvious, people can be liable in their individual capacities for acts performed in state employment, that is, as state agents. The most prominent examples are individual capacity actions brought under 42 U.S.C. § 1983, where plaintiffs must prove that the defendant acted under color of law, see Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985), which in innumerable cases has meant proving that defendants committed some actionable wrong in the course of performing a government job.
 
 
 25
 Considering the nature of official capacity suits, Hobbs's pleadings most reasonably suggest that she sought to impose personal liability on the engineers as well as official liability on the GADOT. Official capacity suits are suits against state agencies, not against the people through whom agencies act. The Supreme Court has said that official capacity suits represent "only another way of pleading an action against an entity of which an officer is an agent," and a victory against a named individual in an official capacity suit is "a victory against the entity that employs him." Graham, at 167-68, 105 S.Ct. at 3105-06. Thus, to impose official liability on a government entity amenable to suit, a plaintiff need do no more than name the government entity defendant; it is unnecessary also to name specific agents. But, having named a government entity as a defendant in the complaint, it would still be necessary to include specific agents' names (as Hobbs did) to indicate suit against them in their individual capacities. So, although words in the caption of a complaint establish little on their own, Hobbs's words show nothing inconsistent with individual capacity and tend to imply that she sought to impose personal as well as official liability.
 
 
 26
 (3) Jury Instruction. That Hobbs requested a jury instruction on agency law fails to show that she sought to impose only official liability on all defendants. The agency instruction was essential to hold defendant GADOT, a government department, liable for the negligent acts of its agents, the named defendants, under the theory of respondeat superior. GADOT can act only through agents. The jury instruction is not inconsistent with holding the engineers liable in their individual capacities. Cf. Lundgren v. McDaniel, 814 F.2d at 604 (instruction that qualified immunity defense would be complete bar to liability was inconsistent with official liability and showed suit was tried against deputies solely in their individual capacities).
 
 
 27
 (4) Post-Trial Remarks.
 
 
 28
 After trial, defendants moved the district court to stay enforcement of judgment until disposition of defendants' pending motions for JNOV and a new trial. Hobbs' brief response to that motion to stay enforcement was this:
 
 
 29
 Plaintiff does not agree to delay issuance and recordation of fi. fa., but Plaintiff is secure in the ultimate enforcement of her Judgment through the DOAS Trust Fund and agrees to stay enforcement pending resolution of post-judgment issues raised by the Defendants.[7]
 
 
 30
 The district court relied in part on the italicized portion of Hobbs's response to conclude that Hobbs sought to impose only official liability. In context, no such inference can be drawn. Hobbs's plainly stated her unwillingness to delay her efforts to issue and record writs of execution against the defendants' assets. To us, it seems hard to read the balance of her statement as anything more than an expression of confidence.
 
 C.
 
 31
 Although the facts upon which the district court relied do suggest to us that Hobbs hoped for a judgment against GADOT (or the named defendants in their official capacities which is the same thing) and to satisfy the judgment from the state trust's insurance proceeds or perhaps other state money, nothing suggests that Hobbs abandoned the prospect of also recovering from the defendants personally, from insurance available to them, if any, or otherwise.
 
 
 32
 Several facts unmentioned in the district court's orders indicate that Hobbs kept her options open. First, Hobbs' complaint alleges several liability among defendants.[8] To conclude that Hobbs sought recovery only from GADOT--which is what it means to say Hobbs sued the agency and the named defendants in their official capacities only--is contrary to Hobbs' allegation that defendants were "severally" liable for her damages.[9] To assert "several" liability between a government defendant and government agents sued in only their official capacities seems useless; in a case with no defendant sued in an individual capacity, plaintiff could recover a judgment, if at all, from a single source--the government agency. In pleading several liability in this case, Hobbs necessarily said that, if she prevailed, GADOT might pay no portion of her recovery and that one or more of the named defendants might pay the entire judgment. So it is hard to read the allegation of several liability in Hobbs's complaint and at the same time to say she sought purely an official capacity recovery.
 
 
 33
 In addition, Hobbs argues, and appellees do not contest, that defendant Ronald Colbin was dismissed "because he became a successor after [the applicable safety] requirements had been violated by his predecessor." Successor officials normally step into the shoes of their predecessors in pending, "official capacity" actions, so Colbin's dismissal tends to refute the idea this was purely an official capacity suit. See Hafer v. Melo, --- U.S. ----, ----, 112 S.Ct. 358, 361, 116 L.Ed.2d 301 (1991) ("[W]hen an official sued in this [official] capacity dies or leaves office, her successor automatically assumes her role in the litigation.").
 
 
 34
 We note also that defendants asserted the Eleventh Amendment defense only for GADOT, the state agency defendant.[10] Although the Eleventh Amendment bars damages suits against state officers sued in their official capacity, Graham, 473 U.S. at 169, 105 S.Ct. at 3107, defendants asserted no Eleventh Amendment defense for the named defendants. 785 F.Supp. at 986. We do not infer, from the failure to raise the Eleventh Amendment defense for the named defendants the same as for GADOT, that defendants were sued solely in their individual capacities. Cf. Lundgren, 814 F.2d at 604 (Raising, litigating, and submitting to jury of qualified immunity defense and instruction that qualified immunity would be complete defense demonstrated that 42 U.S.C. § 1983 claim was tried against defendants solely in their individual capacities.). But we do think the manner of raising defenses in this case permits viewing Hobbs' suit as an action against the named people in both their official and personal capacities.
 
 
 35
 We also disagree with the district court's assertion that Hobbs' filing a writ of execution against the individual defendants' assets was merely an "ex post facto attempt to remedy a lethal mistake in her case." 785 F.Supp. at 989. Hobbs caused the writ to issue when only GADOT, not the individual defendants, had asserted Eleventh Amendment immunity; and Hobbs recorded the writ in each individual's home county. The district court granted Eleventh Amendment immunity for the individuals weeks after the writ issued; no named defendant had asserted immunity based on their official capacity when Hobbs moved to levy on their personal assets. We are disinclined to characterize the issuance of the writ as anything but routine enforcement procedure.
 
 IV. Conclusion
 
 36
 In this case, defendants Gossett, Chambers, Burnham and Colbin were named specifically as defendants; but nothing in the pleadings or pretrial order said these men were sued in their "official capacity" only. More important, neither party took any step during the litigation that is inconsistent with these people being sued in their individual capacities for negligence on their jobs. We conclude that Hobbs sought recovery from the named individuals in both their official and individual capacities. The portion of the district court's order ruling that the Eleventh Amendment bars recovery from the named defendants in an official capacity is AFFIRMED. The district court's determination that Hobbs sought no recovery from the named defendants in their individual capacities is VACATED, and the case is remanded for entry of judgment consistent with this opinion.
 
 
 
 [1]
 The Georgia Department of Administrative Services (GDAS) administers a "Liability Trust Fund," a self-insurance program in which participating Georgia agencies pay premiums in exchange for liability insurance for their employees. See O.C.G.A. §§ 45-9-1, -4. The insurance contract provided that the fund would pay all sums which the covered state employees became obligated to pay for personal injury damages attributable to the employee's job-related negligence. Pl.Exh. 14, Dept. of Admin. Svcs., "Broad Form State Employee Liability Agreement."
 
 
 [2]
 In support of its conclusion that Hobbs had sued the defendants only in their official capacity, the district court cited the complaint, certificate of interested parties, and portions of the pre-trial order. 785 F.Supp. at 986 n. 11. Those documents allege that the named defendants were agents of GADOT, that they negligently timed the traffic signal, and that GADOT was liable for the negligent acts of its agents. R. Vols. 1-1 & 1-46
 
 
 [3]
 The other issue raised merits little discussion: we conclude that Hobbs' appeal was timely filed given the substance and effect of her motion for reconsideration. See Finch v. City of Vernon, 845 F.2d 256, 258 (11th Cir.1988) (substance of post-trial motion, not form, controls tolling of time period for appeal)
 
 
 [4]
 Cf. Martin v. Georgia Dept. of Public Safety, 257 Ga. 300, 357 S.E.2d 569, 572 (1987) (under Georgia 1983 Constitution, creation of DOAS liability trust fund waived state sovereign immunity to the extent of coverage for insured employees sued in state court)
 
 
 [5]
 The issue whether the DOAS liability trust fund constitutes state funds for Eleventh Amendment purposes is not before us, and we do not decide it. Nor do we decide coverage to which defendants might be entitled, for individual or personal liability, under the insurance contract put into evidence in this case. We note only that the insurance policy's words seem to cover employees broadly and do not make plain that employees like these defendant are covered only for official capacity liabilities. One section of the policy provides "comprehensive general liability insurance" covering personal injury liability "resulting from any job-related occurrences caused by any insured," and another section provides "occupational errors or omissions liability insurance" covering liability "arising out of the performance of or failure to perform official duties in the insured's capacity as an officer or employee and caused by the insured." Pl.Exh. 14, Dept. of Admin. Svcs., "Broad Form State Employee Liability Agreement," Part 1, pp A & B
 
 
 [6]
 Hobbs's allegations were summarized in the pre-trial order:
 Mrs. Hobbs contends that the traffic signalization at the intersection in question was improperly designed, engineered and maintained by the following agents of the Georgia Department of Transportation, to-wit: Jerry Gossett and Tony Chambers, Georgia DOT Traffic Engineers, and Ronald K. Colbin and Archie C. Burnham, state traffic engineers. The Georgia Department of Transportation is liable for the negligent acts of its agents in the engineering, design and maintenance of the signalization at the intersection in question. Mrs. Hobbs further contends that the operation and maintenance of the traffic signal in question also constituted a nuisance for which the Georgia Department of Transportation and its agents are liable to the Plaintiff for damages sought herein.
 R. Vol. 1-46, App.C.
 
 
 [7]
 R. Vol. 2-56 (emphasis added)
 
 
 [8]
 R. Vol. 1-1, p 3 ("The actions of the Defendants ... combined jointly, proximately and severally to cause the injuries and damages complained of.")
 
 
 [9]
 The prospect of state insurance does not affect this point. Hobbs would have accepted payments from the Georgia insurance trust fund on behalf of any of the insured defendants had that been possible. But nothing in Hobbs' suit suggests she abandoned her right to recover from the individual defendants' personal assets other than insurance proceeds
 
 
 [10]
 R. Vol. 1-41; 785 F.Supp. at 986