16 F.3d 1573
 62 USLW 2619
 Gaye JACKSON, Barbara Bowens, Plaintiffs-Appellees,
State Farm Mutual Automobile Insurance Company, Plaintiff,
v.
GEORGIA DEPARTMENT OF TRANSPORTATION, Defendant,
Don King, Gene Malcom, Defendants-Appellants,
Joe Street, Don Senkbeil, Bobby Melton, Edwin Thompson, Van
Ethridge, Don Watson, Allan Childers, Defendants,
Jimmy Vaughn, Brian Summers, Jerry Hillhouse, Defendants-Appellants.
 No. 92-8334.
 United States Court of Appeals,
Eleventh Circuit.
 March 25, 1994.
 
 George P. Shingler, Sr., Eric A. Brewton, Cathy A. Cox-Brakefield, Asst. Attys. Gen., Atlanta, GA, for defendants-appellants.
 William B. Hardegree, Hatcher, Stubbs, Land, Hollis & Rothschild, Charles A. Gowen, F. Houser Pugh, Columbus, GA, for plaintiffs-appellees.
 Appeals from the United States District Court for the Middle District of Georgia.
 Before BLACK and CARNES, Circuit Judges, and RONEY, Senior Circuit Judge.
 BLACK, Circuit Judge:
 
 
 1
 In this appeal we determine whether individuals employed by a state agency are entitled to Eleventh Amendment immunity from suit in federal court when they are sued in their individual capacity but are nevertheless eligible for insurance protection from the state's voluntarily established liability insurance trust fund, through which the state will pay the verdict. We hold that a state's liability insurance trust fund voluntarily established to protect its employees against personal liability for damages does not make the state the real party in interest for purposes of Eleventh Amendment immunity. We therefore affirm the district court's ruling denying the employees' motion to dismiss.
 
 I.
 
 2
 Sometime between midnight and 3:00 a.m. on March 17, 1990, a road culvert in Stewart County, Georgia, washed out after the area received thirteen inches of rain in the previous twenty-four hours. The roadway sunk approximately three and one-half feet. Elijah Bowens and his passengers Jerry Franklin Jackson and Jerry Mark Jackson were killed when Bowens drove into the depressed section of roadway and hit the opposite bank.
 
 
 3
 Gaye Jackson and Barbara Bowens, Alabama citizens, brought a tort action in federal court based on diversity jurisdiction against the Georgia Department of Transportation (GDOT) and numerous employees. The suit alleged negligent inspection of the culvert that collapsed and negligent review of the inspection reports. The district court dismissed the GDOT, finding it immune from suit under the Eleventh Amendment. After a five-day trial, the jury found Appellants Don King, Gene Malcom, Jimmy Vaughn, Brian Summers, and Jerry Hillhouse liable for negligence.[1]
 
 II.
 
 4
 The primary[2] question presented in this case is whether the GDOT employees enjoy the state's Eleventh Amendment immunity from suit in federal court. To answer this, we must determine in which capacity the defendants were sued and whether the state's voluntarily established liability insurance trust fund, which will pay the damages judgment, makes the state the real party in interest in this action.
 
 A.
 
 5
 Under the Eleventh Amendment, state officials sued for damages in their official capacity are immune from suit in federal court. E.g., Kentucky v. Graham, 473 U.S. 159, 169, 105 S.Ct. 3099, 3107, 87 L.Ed.2d 114 (1985). In contrast, the Eleventh Amendment does not protect state employees sued in their individual capacity for employment-related acts. Hafer v. Melo, --- U.S. ----, ---- - ----, 112 S.Ct. 358, 362-63, 116 L.Ed.2d 301 (1991); Scheuer v. Rhodes, 416 U.S. 232, 238, 94 S.Ct. 1683, 1687, 40 L.Ed.2d 90 (1974); Hobbs v. Roberts, 999 F.2d 1526, 1527 (11th Cir.1993).[3] In this case, neither the complaint's caption nor the complaint itself clearly state whether the GDOT employees were sued in their individual capacity, their official capacity, or both. When it is not clear in which capacity the defendants are sued, the course of proceedings typically indicates the nature of the liability sought to be imposed. Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985); Hobbs, 999 F.2d at 1528.
 
 
 6
 The parties and the district court in this case proceeded as if the Defendants were sued in their individual capacity. In particular, the district court dismissed the GDOT as immune from suit in federal court under the Eleventh Amendment, while permitting the suit to proceed against the employees. During argument on the employees' motion to dismiss pursuant to the Eleventh Amendment and Georgia law, made after jury selection but immediately before trial began, the Plaintiffs' attorney argued that the Eleventh Amendment did not provide a defense to state employees sued in their individual capacity. The district court reserved judgment on the motion when it was made and denied it again at the conclusion of the trial. These actions indicate that the district court understood the employees were not sued in their official capacity, or it would have dismissed them as it had the GDOT. Finally, not only did the complaint name the individuals as well as the GDOT, it also sought joint and several liability. See Hobbs, 999 F.2d at 1531. We conclude that the GDOT employees were sued in their individual capacity.
 
 B.
 
 7
 It is unfortunate that this Court must resolve on appeal the capacity in which defendants are sued. As we stated above, the answer to that issue determines whether the suit may go forward in federal court. Additionally, the defenses to liability available to defendants vary according to the capacity in which they are sued. Kentucky v. Graham, 473 U.S. at 166-67, 105 S.Ct. at 3105-06.
 
 
 8
 This inquiry would not be necessary if the Plaintiffs had been required to identify the capacity in which they sued the GDOT employees. The absence of such a requirement results in the detailed analysis that occurred here and in Hobbs, in order for this Court to determine whether the defendants were sued in their individual capacity, their official capacity, or both. The district courts in this Circuit are in a position to ensure a more effective use of judicial resources. They should consider establishing a means by which the record would clearly reflect whether the case was brought against a defendant in an individual or official capacity. One way to accomplish this would be by a local rule. Cf. Knighton v. Watkins, 616 F.2d 795, 798 n. 2 (5th Cir.1980) (expressing the court's belief that the problem of Sec. 1988 attorney's fees petitions filed post judgment would be handled best by a local rule), cited with approval in White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445, 454 n. 16, 102 S.Ct. 1162, 1168 n. 16, 71 L.Ed.2d 325 (1982).
 
 C.
 
 9
 We now turn to the question of whether, when a state voluntarily provides liability insurance to protect its employees from personal liability for money damages, the state's Eleventh Amendment immunity from suit is thereby extended to its employees sued in their individual capacity. It is undisputed that the money damages in this case will be paid through the state's liability insurance trust fund, which provides liability insurance for state officers and employees as protection against personal liability for damages arising out of the performance of their duties.[4]
 
 
 10
 Appellants assert that the State of Georgia is the real party in interest because it will pay the judgment from its liability insurance trust fund. Appellees counter that Eleventh Amendment immunity applies only when a judgment must be paid out of state funds and that, while the judgment binds the employees, the state is not compelled to pay the judgment: it only does so because it has voluntarily established the liability insurance trust fund.
 
 
 11
 The Eleventh Amendment bars suit against a state as a named defendant in federal court.[5] Osborn v. Bank of United States, 22 U.S. (9 Wheat.) 738, 6 L.Ed. 204 (1824). It also bars suit when state officials are named defendants if the state is the "real, substantial party in interest and is entitled to invoke its sovereign immunity from suit." Ford Motor Co. v. Department of Treasury, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). The general test for determining whether the state is the real party in interest, even though it is not a named defendant, is whether the relief sought against the nominal defendant would in fact operate against the state, especially by imposing liability damages that must be paid out of the public fisc. E.g., Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 101 & n. 11, 104 S.Ct. 900, 908 & n. 11, 79 L.Ed.2d 67 (1984); Edelman v. Jordan, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355-56, 39 L.Ed.2d 662 (1974).
 
 
 12
 We note first that as an individual capacity suit this action is not "in essence one for the recovery of money from the state." Ford Motor Co., 323 U.S. at 464, 65 S.Ct. at 350. The essence of an individual capacity suit is that the plaintiff is seeking to recover from the individual defendant, who is personally liable for the judgment.[6] Gamble v. Florida Dep't of Health & Rehabilitative Servs., 779 F.2d 1509, 1513 (11th Cir.1986).
 
 
 13
 Moreover, this Court has previously reasoned that Eleventh Amendment immunity applies only if the judgment must, under all circumstances, be paid out of state funds. Travelers Indem. Co. v. School Bd., 666 F.2d 505, 509 (11th Cir.), cert. denied, 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982). This reasoning is congruous with the Supreme Court's teaching. In Edelman v. Jordan, for example, the Supreme Court stated that "the rule has evolved that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." 415 U.S. at 663, 94 S.Ct. at 1356; see also Kentucky v. Graham, 473 U.S. at 167-68, 105 S.Ct. at 3106-07 (holding that, when a plaintiff prevails in a Sec. 1983 suit against state employees in their individual capacities, the state cannot be held responsible for attorney's fees). The voluntary nature of the state's liability insurance trust fund precludes finding that the damages award must be paid by the state in this action.
 
 
 14
 The district court judgment in this case neither compels the state to act, Dugan v. Rank, 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963), nor imposes liability upon the state. It only establishes the state employees' individual liability for their tortious conduct; the state acts of its own volition to protect its employees from money damages arising from their liability. Indeed, there is no use for the insurance protection if the employee is immune from suit by virtue of the state establishing the protection. See Rubacha v. Coler, 607 F.Supp. 477, 481 (N.D.Ill.1985) ("To hold otherwise would give the State carte blanche to provide a meaningless kind of paper protection--granting an 'indemnification' that would, by its very existence, destroy the liability to which the indemnity purportedly extends.") We conclude that the existence of a voluntarily established liability trust fund does not make the state the real party in interest in this action and that the trust fund does not extend the state's Eleventh Amendment immunity to its employees sued in their individual capacity.[7]
 
 III.
 
 15
 We have determined that the GDOT employees were sued in their individual capacity and that the state is not the real party in interest in this case. For these reasons, the district court's ruling is
 
 
 16
 AFFIRMED.
 
 CARNES, Circuit Judge, concurring:
 
 17
 I concur in the result, join all of the majority opinion, and write separately to answer the dissenting part of the other separate opinion, which I will refer to as the dissenting opinion.
 
 
 18
 All of the judges on this panel agree that the voluntary establishment of an insurance trust fund for state employees does not make a state the real party in interest for Eleventh Amendment purposes. Judge Black and I agree that this panel is bound by the result and the at least implicit holdings in Hobbs v. Roberts, 999 F.2d 1526 (11th Cir.1993), which the dissenting opinion correctly describes as "a recently decided case in which the underlying facts are virtually the same as in this case."
 
 
 19
 The judges of this panel are in disagreement over whether Hobbs should stand or should be taken en banc and changed. I believe that Hobbs was correctly decided; Judge Roney thinks it was not; and Judge Black in her majority opinion has expressed no view on the subject. The underlying issue is whether the Georgia law governing the state law defenses of sovereign immunity and official immunity controls the federal question of whether the Eleventh Amendment bars such a suit from federal court.
 
 
 20
 As I understand it, the dissenting opinion's conclusion that state law governs the Eleventh Amendment issue is based upon the following syllogism: 1) under Georgia law a damages suit against state employees for discretionary acts within the scope of their employment ("work-related torts") is deemed to be an official capacity suit for purposes of the state law defenses of sovereign immunity and official immunity; 2) under the Eleventh Amendment a damages suit against state employees in their official capacity is deemed to be against the state and is barred; 3) therefore, a damages suit against employees of the State of Georgia for work-related torts is barred by the Eleventh Amendment. The error is not in the two explicit premises, which are true as far as they go. The error is in the implicit premise, or assumption, that the Georgia law about official capacity as it relates to the state law defenses controls the federal question about official capacity as it relates to the Eleventh Amendment. It does not.
 
 
 21
 None of the Georgia decisions cited in the dissenting opinion purport to address any issue involving the Eleventh Amendment, which is purely federal law with no application in any state court. Even if the Georgia courts attempted to propound Eleventh Amendment law, we would not be bound by any of their pronouncements on the subject. Eleventh Amendment questions can only arise in and be decided by federal courts, a truism that applies as much in diversity cases as in any others. The Georgia courts do sometimes apply the same label--"official capacity"--to describe a suit barred by the state law doctrine of official immunity,[1] that we sometimes apply to describe a type of suit barred by the Eleventh Amendment. But similarity of labels does not mean similarity of content.
 
 
 22
 In Georgia law, an "official capacity" lawsuit against a public employee is simply one that arises out of the employee's official duties. For example, Hennessy v. Webb, 245 Ga. 329, 264 S.E.2d 878 (1980), involved a lawsuit against a principal who had allegedly negligently allowed a mat to be placed at a door of the school, causing a student to slip and fall. The Georgia Supreme Court concluded that the suit was one against the principal in his official capacity, because it arose: "solely because of the position he held and the duties imposed upon him as a result of his position. Indeed, the act complained of could only have been done in the official capacity of defendant." 264 S.E.2d at 880. A suit arising out of the work-related duties of a Georgia public employee is usually barred by the doctrine of official immunity. Thus, at least in this area of Georgia law, "official capacity" is a term used to describe the nature of the cause of action. If the cause of action arises out of the defendant employee's work-related acts it is an "official capacity" lawsuit, and the employee is ordinarily immune from liability. That is Georgia law.
 
 
 23
 In Eleventh Amendment jurisprudence, on the other hand, the term "official capacity" means something different. It is used to describe a lawsuit against a public official or employee in which the governmental employer is the real party in interest, meaning in the context of damages, that the plaintiff is seeking to collect from the governmental entity or unit which employs the individual defendant. The Supreme Court has explained what "official capacity" means in federal jurisprudence:
 
 
 24
 Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 237-38, 94 S.Ct. 1683, 1686-87, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 n. 55, 56 L.Ed.2d 611 (1978). As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. [Brandon v. Holt, 469 U.S. 464, 471-472, 105 S.Ct. 873, 878, 83 L.Ed.2d 878 (1985).] It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.
 
 
 25
 Kentucky v. Graham, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (footnote omitted). Because the Eleventh Amendment bars from federal court an action seeking money damages from a state, a damages suit against state officials or employees in their official capacities, as that term is defined in the federal decisions, is also barred. E.g., Carr v. City of Florence, 916 F.2d 1521, 1524 (11th Cir.1990) (holding that "lawsuits against a state official in his or her official capacity are suits against the state [for Eleventh Amendment purposes] when the state is the real, substantial party in interest," and "the state is considered the real party in interest because an award of damages would be paid by the state." (internal quotation omitted)); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir.1989) (holding that a cause of action against sheriffs in their personal capacities is not barred by the Eleventh Amendment, but that an identical cause of action against sheriffs in their official capacities is barred by the Amendment, "because any damage award would be paid out of the state treasury, an impermissible occurrence under our constitutional scheme").
 
 
 26
 Thus, Georgia law applies the "official capacity" label to lawsuits against public employees involving work-related torts, and such lawsuits are ordinarily barred by the state law defense of official immunity, regardless of whether they seek to collect from the state. By contrast, federal law applies the "official capacity" label to lawsuits against public employees that seek to collect damages from a state, and such lawsuits are ordinarily barred from federal court by the Eleventh Amendment. Notwithstanding the homonyms, the law being applied in the two instances is different. In Kentucky v. Graham, the Supreme Court observed that the concept of official-capacity lawsuits "continues to confuse lawyers and confound lower courts." 473 U.S. at 164, 105 S.Ct. at 3105. The dissenting opinion is an example of that phenomenon. It has confused the term "official capacity" as it relates to Georgia official immunity law with the term "official capacity" as it relates to Eleventh Amendment law.
 
 
 27
 Of course, this is a diversity case and under Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we apply Georgia law to decide the substantive issues. Whether the Georgia law defense of official immunity bars any recovery of damages from the state employee defendants in this case is an Erie -controlled issue. The applicable state law is the Georgia Constitution of 1983, Art. I, Sec. 2, p IX, as interpreted by the Georgia Supreme Court in Martin v. Georgia Dep't of Public Safety, 257 Ga. 300, 357 S.E.2d 569, 571-72 (1987). The Martin decision authoritatively establishes that in a case such as this one where the state has established an insurance fund to cover work-related judgments against state employees, the state law defenses of sovereign and official immunity are waived to the extent of the insurance coverage. We are bound by Erie to follow the Georgia Supreme Court's Martin decision, which mandates our holding that the state law defenses of sovereign and official immunity do not bar the judgment in this case. On the other hand, the Erie doctrine neither requires nor permits us to apply state law to federal law issues such as the one involving the Eleventh Amendment. Thus, the dissenting opinion is plainly wrong when it says that, "[b]ecause this suit would be treated under Georgia law as one against the state, it is subject to the proscription of the Eleventh Amendment." The Eleventh Amendment is not an issue of Georgia law.[2]
 
 
 28
 The dissenting opinion also says that the result of Hobbs and this decision is that "Georgia state employees can be sued in their individual capacities in federal court, only by non-citizens of Georgia, and be held personally liable for the judgment when such a suit could not be maintained in Georgia state court" (emphasis in original). The first part of that statement is, of course, correct: absent diversity of citizenship, a state law tort action cannot be brought against Georgians in federal court. However, the second part of the statement is wrong. It is not true that Georgia state employees can be held personally liable for a judgment based upon state tort law in federal court when they could not be held liable in the courts of Georgia. The substantive law of Georgia--including the law of sovereign immunity, official immunity, and any and all other defenses--applies as fully in a diversity action in federal court as it does in the state courts of Georgia.
 
 
 29
 Each and every one of these state employee defendants would have been subject to exactly the same liability had this case been litigated in state court. The reason is the same reason they were held liable in this federal diversity proceeding: the State of Georgia saw fit to write into its constitution a waiver of sovereign and official immunity to the extent of insurance coverage applicable to the claim. Ga. Const. Art. I, Sec. 2, p IX (1983); Martin v. Georgia Dept. of Public Safety. The decisions of the Georgia Supreme Court on state law are as binding on the trial courts of that state as they are on us, and the Martin decision establishes that the constitutional provision coupled with insurance coverage has waived the official immunity defense, as well as the sovereign immunity defense, to the extent of that insurance coverage. It is undisputed that the state had provided insurance fund coverage for the state employees sued in this case and that the coverage was sufficient for the judgments. Therefore, if this case had been brought in state court, the same result would have obtained--waiver of the official immunity defense and judgment for the plaintiffs. Disparate results would have occurred only if the Georgia courts would have been less faithful to the Georgia Constitution and to the Georgia Supreme Court's Martin decision than we have been, an assumption we should not make.[3]
 
 
 30
 Because it recognizes, or at least assumes, that the result we reach is compelled by the Hobbs result, the dissenting opinion amounts to a call for en banc consideration of this matter. The matter is not en banc worthy for two reasons. First, Hobbs and this decision are correct. Second, the number of cases involved is relatively small. Georgia has amended the waiver of sovereign and official immunity out of its constitution with prospective effect from January 1, 1991. See Ga. Const. Art. I, Sec. 2, p IX (Supp.1993); see also Donaldson v. Department of Transp., 262 Ga. 49, 414 S.E.2d 638, 639-42 (1992). Thus, only those diversity of citizenship cases involving work-related torts of Georgia state employees during an eight-year period, which has already passed, are affected by Hobbs and this decision. As to all other cases, it is clear that sovereign and official immunity would be a viable defense in state or federal court.
 
 
 31
 RONEY, Senior Circuit Judge, concurring in part, and dissenting in part:
 
 
 32
 By the decision in this case and in Hobbs v. Roberts, 999 F.2d 1526 (11th Cir.1993), this Circuit has now created a personal cause of action against individual state employees in favor of out-of-state residents that is not available to Georgia residents. This different substantive result in federal court, a result that could not be obtained in a state courtroom, conflicts with the policy of the federal judiciary that has been faithfully followed since Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).
 
 
 33
 I concur in Section B of the Court's opinion and in the Court's conclusion that the state's voluntarily established trust fund does not make the state the real party in interest for purposes of Eleventh Amendment immunity.
 
 
 34
 I respectfully dissent from an affirmance of the judgment for plaintiffs on the ground that this suit was, in reality, a suit against the defendants in their official capacities. As such, the Eleventh Amendment bars the suit from prosecution in federal court.
 
 
 35
 I agree with the Court that in cases where it is not clear in what capacity the defendants were sued, the course of proceedings indicates the nature of the liability imposed. Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985); Hobbs v. Roberts, 999 F.2d 1526 (11th Cir.1993); Lundgren v. McDaniel, 814 F.2d 600, 604 & n. 2 (11th Cir.1987). The nature of the proceedings in this suit, however, clearly indicates that this was an official capacity suit.
 
 
 36
 This is a diversity suit brought under state tort law. The nature of the suit is dictated by Georgia law. This is not a Section 1983 suit for violation of a federal law or the United States Constitution in which the nature of the suit would be determined by federal law. The plaintiffs allege negligence in the inspection of a road. Every act of negligence alleged was committed by the defendants within the scope of their employment. Plaintiffs do not assert that the defendants acted outside the scope of their employment.
 
 
 37
 Georgia courts have consistently held that suits against GDOT employees for actions within the scope of their employment are official capacity suits. Donaldson v. Dept. of Transp., 262 Ga. 49, 414 S.E.2d 638, 642 (1992) ("Insofar as Durrence, the DOT employee sued here, may be sued for discretionary acts taken within the scope of his duties as an employee of the DOT, he is protected by official immunity.... [a]n action against a DOT employee for discretionary acts or omissions for which the employee is protected by official immunity must be brought as an action against the DOT."); Price v. Dept. of Transp., 257 Ga. 535, 361 S.E.2d 146, 148 (1987) ("the claim against the employees of DOT here is in reality a claim against the DOT. The allegations of negligence relate to acts or omissions requiring discretion and judgment. This then is a claim against the state, or more directly its department, DOT."); Hennessy v. Webb, 245 Ga. 329, 264 S.E.2d 878, 879 (1980) ("where an officer or agent of the state is sued in his official capacity or where such officers are sued for acting in areas where they are vested with discretion and empowered to exercise judgment in matters before them" it is a suit against the state). In Hennessy, the court goes on to state that the official is given immunity from liability "provided the acts complained of are done within the scope of the officer's authority, and without wilfulness, malice, or corruption." Id. 264 S.E.2d at 880. There were no such allegations in this case.
 
 
 38
 These cases make clear that a suit for negligence against the individual GDOT employee acting within the scope of his employment is equivalent to a suit against the state. The reason the Georgia courts treat cases such as this as claims against the state should be obvious. The building and maintenance of roads is a corporate responsibility. No individual maintains the state roads. Inspectors do not repair roads. Only the official actions of each person in the line of command can result in the proper or improper maintenance of roads. There was no action any separate defendant could have taken, outside of the official work he was employed to do, that would have any effect on the condition of the road at the time of this accident. What the defendants did, they did for the state agency that is ultimately responsible for the condition of the roads. Every act of negligence alleged was an administrative decision made by the defendants within the scope of their employment.
 
 
 39
 The Court states that the parties and the district court proceeded as if the defendants were sued in their individual capacity. To reach this conclusion, the Court relies on the argument in the employees' motion to dismiss pursuant to the Eleventh Amendment and Georgia law. Plaintiffs' attorney argued that the Eleventh Amendment did not provide a defense to state employees sued in their individual capacity. The district court reserved judgment on the motion and denied it again at the trial's conclusion. The district court treated the case as if the employees were being sued in their individual capacity, or it would have dismissed them as it had the GDOT. The complaint sought joint and several liability.
 
 
 40
 If this was a suit against these employees in their individual capacities, it was kept a secret from the factfinder, the jury. Fundamental fairness would seem to indicate the jury should be advised in what capacity the defendants were being sued. There is no indication from the proceedings before the jury, however, that plaintiffs brought this action as an individual capacity suit. Plaintiffs only indicated that the suit was for actions taken officially. Plaintiffs alleged in their complaint that the defendants acted within the scope of their employment. During opening statements at trial, plaintiffs told the jury that the defendants should have noticed that the culvert's foundation was improper when the wing wall fell off. During closing arguments, plaintiffs discussed generally GDOT employees' failure to properly inspect the culvert. In essence, plaintiffs argued that employees of the GDOT did not do their jobs. Finally, in its instructions to the jury, the court never indicated that the suit involved the individual acts of the defendants. There was not a word about liability for any actions other than their official activities. If this was a suit against the employees in their individual capacity, surely the parties or the court would have so informed the jury. Because this was a suit for negligent acts committed within the scope of employment, it was a suit that Georgia courts treat as an official capacity suit with the state being the real party in interest.
 
 
 41
 Even if the plaintiffs intended to sue defendants in their individual capacity, because the suit alleged only negligent acts within the scope of employment, the cases discussed earlier make clear that Georgia courts would deem such an action as one against the state. No cases have been cited in which a Georgia court has held that a GDOT employee could be sued in an individual capacity. Before the federal court creates a cause of action which finds no support in state law, the least it should do is certify to the Georgia Supreme Court the question of whether there are any circumstances under which a plaintiff can obtain a personal judgment against a DOT employee as a result of that employee's negligent acts, absent allegations of wilfulness, malice or corruption.
 
 
 42
 The Court here concludes that state employees may be sued in their individual capacities in a federal diversity action, relying on Hobbs, 999 F.2d 1526, 1527 (11th Cir.1993), which relies on a line of federal question cases. Hobbs is a recently decided case in which the underlying facts are virtually the same as this case. Hobbs also involves a diversity negligence action against GDOT employees for discretionary acts taken within the scope of their employment. Hobbs holds that GDOT employees can be sued in their individual capacities in a federal diversity negligence suit.
 
 
 43
 I understand this panel of the Court is bound by the decision in Hobbs. The problem with the Hobbs analysis, however, is that the Court relies solely on cases in which the underlying action is based on federal Section 1983 claims. This analysis reflects the belief that diversity cases are like federal question cases for purposes of Eleventh Amendment analysis. In Section 1983 cases, to establish personal liability, plaintiff must show that the official, acting under color of state law, caused the deprivation of a federal right. See, e.g., Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). An official in a personal-capacity suit may have available certain personal immunity defenses in such an action, such as qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).
 
 
 44
 Because this is a diversity case, qualified immunity is not an issue. See Griesel v. Hamlin, 963 F.2d 338 (11th Cir.1992). Rather, state rules of immunity govern actions in federal court alleging violations of state law. Erie Railroad Co. v. Tompkins, 304 U.S. at 78, 58 S.Ct. at 822. See, e.g., Benning v. Board of Regents of Regency Universities, 928 F.2d 775 (7th Cir.1991); Napolitano v. Flynn, 949 F.2d 617 (2d Cir.1991). Yet, after Hobbs, Georgia state employees can be sued in their individual capacities in federal court, only by non-citizens of Georgia, and be held personally liable for the judgment when such a suit could not be maintained in Georgia state court. In effect, this Court has created from whole cloth a new cause of action for plaintiffs suing for negligence in federal court. This is contrary to the principles of federalism and the Erie doctrine.
 
 
 45
 Because this suit would be treated under Georgia law as one against the state, it is subject to the proscription of the Eleventh Amendment. The Eleventh Amendment prohibits a federal court from exercising jurisdiction over a lawsuit against a state except where the state has consented to suit or waived its immunity, or where Congress has overridden the state's immunity. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 98-100, 104 S.Ct. 900, 906-908, 79 L.Ed.2d 67 (1984). Congress has not overridden Georgia's immunity in this situation.
 
 
 46
 There is no question as to whether the law of sovereign immunity would apply to this case in a Georgia state court, even though it is brought against individuals and not the state agency. The Georgia Supreme Court has held that GDOT employees have the same sovereign immunity as the state agency itself in a case alleging negligence in the performance of a discretionary task in the course of their employment. Hennessy, 264 S.E.2d 878. The Hennessy court rejected the plaintiff's argument in that case that the suit was an individual capacity suit not subject to immunity because the defendant's allegedly negligent actions were committed entirely within his official role and defendant was not alleged to have exceeded his scope of employment. In a case similar to the one before this Court, the Georgia Supreme Court held that Hennessy's rule was applicable to a case involving the alleged negligent acts of GDOT employees. Price, 361 S.E.2d 146. In Price, plaintiff alleged that GDOT employees acted negligently in designing and maintaining a roadway which contributed to her injuries resulting from an automobile collision. The court concluded that design and maintenance of a road were "acts or omissions requiring discretion and judgment" making the claim an action against the state and, therefore, subject to sovereign immunity. Price, 361 S.E.2d at 148. See also Donaldson, 414 S.E.2d 638. Similarly, inspection of a culvert is a discretionary function for which errors in execution may be brought only in an official capacity suit subject to sovereign immunity.
 
 
 47
 Of course, the purchase of insurance on behalf of state employees sued for acts performed in the course of their duties is a partial waiver of sovereign immunity to the extent there is insurance coverage. Price, 361 S.E.2d at 148.
 
 
 48
 The question then is not whether the fact that Georgia purchased insurance on behalf of these defendants brings them within the cloak of Eleventh Amendment immunity, as addressed by the Court's opinion, but whether the fact the state has partially waived the sovereign immunity deprives the defendants of the Eleventh Amendment immunity they would otherwise have. Eleventh Amendment immunity and sovereign immunity are distinct concepts. While the Georgia Constitution provides that sovereign immunity can be waived through the purchase of insurance, that provision explicitly states that United States constitutional rights, e.g., Eleventh Amendment immunity, are not so waived. Ga. Const. Art. 1, Sec. 2, para. 9. Therefore, there has been no state waiver of Eleventh Amendment immunity as would provide a federal court with jurisdiction under Pennhurst. Thus, although defendants are subject to liability in their official capacities in Georgia state court to the extent there is insurance coverage, due to the state's waiver of sovereign immunity, they are immune from suit in federal court based on Eleventh Amendment immunity.
 
 
 
 [1]
 Defendant Senkbeil was voluntarily dismissed. The jury returned a verdict in favor of Defendants Street, Melton, Thompson, Ethridge, Watson, and Childers
 
 
 [2]
 The Appellants also assert that the district court erred in excluding evidence of storm damage throughout the county, thereby preventing full proof of their affirmative defense of an act of God. We find no error in the district court's decision on this matter
 
 
 [3]
 We are bound by this Court's recent decision in Hobbs v. Roberts, 999 F.2d 1526 (11th Cir.1993), under which state employees may be sued in their individual capacities in a diversity action for damages
 
 
 [4]
 Georgia law provides in relevant part:
 (a) In addition to any other compensation which may be paid to an officer, official, or employee of any [governmental unit] of this state, each such [governmental unit] is authorized, in its discretion, to purchase policies of liability insurance or contracts of indemnity or to formulate sound programs of self-insurance utilizing funds available to such [governmental unit], insuring or indemnifying such officers, officials, or employees to the extent that they are not immune from liability against personal liability for damages arising out of the performance of their duties or in any way connected therewith....
 ....
 (d) The existence of such insurance or indemnification shall not be disclosed or suggested in any action brought against such individual.
 O.C.G.A. Sec. 45-9-1 (Michie 1990).
 
 
 [5]
 The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." A state may waive its Eleventh Amendment immunity and consent to be sued in federal court, and Congress may override it. E.g., Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985). Neither waiver applies in this case
 
 
 [6]
 The 1983 Georgia Constitution waived the state's sovereign immunity "as to those actions for the recovery of damages for any claim against the state or any of its departments." Ga. Const. art. I, Sec. 2. This suit was filed in December 1990. Georgia law provided at that time that the state's sovereign immunity and state employees' official immunity were "waived to the extent to which th[e insurance] coverage will pay for the claims asserted." Martin v. Georgia Dep't of Pub. Safety, 257 Ga. 300, 303, 357 S.E.2d 569, 572 (1987), cert. denied, 484 U.S. 998, 108 S.Ct. 685, 98 L.Ed.2d 638 (1988); see also Price v. Department of Transp., 257 Ga. 535, 361 S.E.2d 146 (1987). Although the Georgia Constitution has since been amended to "extend sovereign immunity to all state departments and agencies, regardless of any insurance," Donaldson v. Department of Transportation, 262 Ga. 49, 60, 414 S.E.2d 638, 639 (1992), the Georgia Supreme Court ruled that the constitutional amendment modifying the state's sovereign immunity waiver could only be applied prospectively from its effective date of January 1, 1991, id. at 63, 414 S.E.2d at 641-42. It follows that Donaldson cannot be used to protect these state employees from this suit, because official and sovereign immunity were waived when this suit was filed. Donaldson specifically recognizes the waiver: "Under Georgia law, the waiver of sovereign immunity occurs at the time that the action arises, not at the time that the negligent act was committed.... A waiver of sovereign immunity is binding on the state with respect to any pending action." Id
 
 
 [7]
 As the former Fifth Circuit stated, "[A]n indemnity statute is only an agreement between the state and these individuals and cannot thereby be converted into an extension of Eleventh Amendment immunity by the state." Downing v. Williams, 624 F.2d 612, 626 (5th Cir.1980), vacated on other grounds, 645 F.2d 1226 (5th Cir.1981). Although the opinion in Downing was vacated on unrelated grounds and is not binding precedent on this Circuit, its reasoning does have persuasive value
 Our decision in this case is consistent with the rule in numerous other circuits. E.g., Benning v. Board of Regents of Regency Univs., 928 F.2d 775, 778 (7th Cir.1991) ("[T]he state cannot manufacture immunity for its employees simply by volunteering to indemnify them."); Griess v. Colorado, 841 F.2d 1042, 1046-47 (10th Cir.1988) (same); Spruytte v. Walters, 753 F.2d 498, 512 n. 6 (6th Cir.1985) (same), cert. denied, 474 U.S. 1054, 106 S.Ct. 788, 88 L.Ed.2d 767 (1986); Demery v. Kupperman, 735 F.2d 1139, 1147-49 (9th Cir.1984) (same), cert. denied, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985). Justice Brennan noted that:
 [The Supreme Court] has not decided which arrangements between a State and a nominal defendant are sufficient to establish that the State is the real party in interest for Eleventh Amendment purposes. It may be that a simple indemnification clause, without more, does not trigger the doctrine. Lower courts have uniformly held that States may not cloak their officers with a personal Eleventh Amendment defense by promising, by statute, to indemnify them for damage awards imposed on them for actions taken in the course of their employment.
 Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 316 n. 9, 110 S.Ct. 1868, 1878 n. 9, 109 L.Ed.2d 264 (1990) (Brennan, J., concurring).
 
 
 [1]
 In Georgia, "sovereign immunity" applies to protect the state or other governmental entity from suit, while "official immunity" applies to protect the governmental employee. See, e.g., Martin v. Georgia Dept. of Public Safety, 257 Ga. 300, 357 S.E.2d 569, 571 (1987)
 
 
 [2]
 The same Georgia constitutional provision that waives sovereign and official immunity where there is insurance coverage expressly reserves any Eleventh Amendment defense the state has. But there is no such defense to begin with in this case, because the suit against these employees is not one in which the state is a party or a real party in interest. A state cannot "non-waive" into existence an Eleventh Amendment defense where the Amendment itself does not provide one
 
 
 [3]
 On a somewhat related note, the dissenting opinion questions how this lawsuit could be treated as one against the defendant employees in their individual capacities if the jury was never told that it was such a lawsuit. The answer is that the Eleventh Amendment is not a jury question. The usual function of the jury is to decide whether and how much of a judgment is due under the applicable law and facts, not from what source a judgment against the defendants can be collected. That state employee defendants are being sued in their individual capacities is no more relevant to a jury's deliberation than is the existence of insurance coverage. It would have been just as improper to inform the jury that the defendants were being sued in their individual capacities, which is true, as it would have been to inform the jury that any judgment would be paid out of the insurance fund, which is also true