**Nettie VINSON, et al., Plaintiffs,**

v.

**CLARKE COUNTY, ALABAMA, et al., Defendants.**

**No. Civ.A. 95–0819–RV–M.**

United States District Court, S.D. Alabama, Southern Division.

June 17, 1998.

---

Richard M. Crump, Donald G. Beebe, Mobile, AL, Rocky W. Eaton, Mobile, AL, for plaintiffs.

Steven L. Terry, Peter V. Sintz, Mobile, AL, for defendants.

## MEMORANDUM OPINION AND ORDER

VOLLMER, District Judge.

Presently before the court are the defendants' motion for summary judgment (Doc. 15) and a supporting brief (Doc. 16) with exhibits (Doc. 17). Plaintiffs filed a response in opposition to the motion (Doc. 19), and defendants thereafter filed a reply brief (Doc. 20). The court has carefully reviewed the law and considered the arguments of the parties. For the reasons set forth below, it is the decision of the court that defendants' motion for summary judgment is due to be granted.

## I. OVERVIEW OF THIS LITIGATION

This is an action brought by survivors of the deceased, Edgar Louis Vinson, Jr. (hereinafter "Vinson"). On October 17, 1994, Vinson was arrested for DUI, placed in Clarke County Jail, and found dead in his cell approximately 30 minutes after his incarceration. Medical records indicate that he died as a result of suicide from asphyxiation caused by hanging.

The defendants in this lawsuit are Clarke County; Jack Day, the Sheriff of Clarke County at the time of Vinson's death; and Donald Bradford, a civilian (non-deputized) jailer of Clarke County. Sheriff Day and jailer Bradford are sued in both their individual and official capacities.[1] Deputy Sheriff Buster Hough was also named as a party defendant but was dismissed from the action in a previous order of the court. (*See* Pretrial Order, Doc. 26, at 7). In Count I of the complaint, plaintiffs seek relief pursuant to 42 U.S.C. § 1983 for alleged deprivation of Vinson's constitutional right to due process of law, as set forth in the Fourteenth Amendment to the U.S. Constitution. They contend that jailer Bradford "acted with deliberate indifference to Vinson by allowing or causing him to suffocate by strangulation while in [his] custody."[2] Complaint ¶ 9. Furthermore, they contend that Clarke County and Sheriff Day were deliberately indifferent to Vinson's due process rights because they failed to train jail personnel properly in the care of intoxicated inmates.

Additionally, plaintiffs claim that Clarke County's inadequate maintenance of the physical facilities of the jail evidences a policy of deliberate indifference to the collective rights of all detainees and/or all intoxi-

---

1. In the Order of December 9, 1996, the court ruled that the complaint would be broadly construed to state a claim against these two defendants in both their individual and official capacities, despite the confusing and contradictory language in the pleading. (Doc. 26 at 8). The Eleventh Circuit approves of such generous interpretations of capacity status in § 1983 lawsuits. *See Hobbs v. Roberts*, 999 F.2d 1526, 1529–30 (11th Cir.1993).

2. Plaintiffs also assert this claim against Sheriff Day. The court notes, however, that Sheriff Day was not present at the jail at the time of Vinson's death. Nor was he involved in the arrest or subsequent booking process. Therefore, plaintiffs may proceed against Sheriff Day only upon the allegations of failure to train.

cated pre-trial detainees.[3] Specifically, they allege that because the county has never made any efforts to modify or replace the jail facility so as to reduce or eliminate the implements which a detainee could use to hang himself, or to install video monitoring equipment, jail detainees are unconstitutionally subjected to dangerous conditions in violation of the prohibition against cruel and unusual punishment.[4] Central to all of plaintiffs' claims is the argument that intoxicated inmates warrant special attention from their custodians because they are particularly prone to attempt suicide.

In Count II of the complaint, plaintiffs seek to recover money damages under Alabama law for Vinson's pain and suffering which allegedly resulted from the wantonness and negligence of the defendants in caring for inmate Vinson. Finally, in Count III plaintiffs set forth a claim for relief under Alabama's wrongful death statute.

3. The plaintiffs alternate between stressing the rights of all inmates and all intoxicated pre-trial detainees. At this juncture, the court will broadly interpret plaintiffs' arguments and pleadings as stating claims against the county under both postures.

4. Plaintiffs first raised this physical modification claim in their "Opposition to Defendants' Motion for Summary Judgment" (Doc. 19). Although the plaintiffs have not sought leave of court to add this claim to the complaint, they have included such a claim in the Joint Pretrial Document (Doc. 30), which was incorporated as a binding portion of the court's Pretrial Order (Doc. 26). See Doc. 27; cf. Expertise, Inc. v. Aetna Finance Co., 810 F.2d 968, 973 (10th Cir. 1987) ("When an issue is set forth in a pretrial order, it is not necessary to amend previously filed pleadings.").

In their reply brief in support of the motion for summary judgment (Doc. 20) at p. 13, the defendants argue that because the plaintiffs' physical modification claim was not raised in the complaint, the claim should be dismissed for lack of proper pleading. Although the defendants' failure to plead defense has some merit, the court finds that defendants' waived this argument by failing to assert it in the Joint Pretrial Document. At four separate locations in that document, the defendants address the merits of the physical modification claim. See ¶ 7 at p. 7; ¶ 4 at p. 10; ¶ 3 p. 15; p. 16. Nowhere in the document, however, do the defendants' assert their defense

## II. PROCEDURAL BACKGROUND

### A. Jurisdiction

Title 28 U.S.C. § 1331 provides the court with federal question jurisdiction over plaintiffs' claim for relief pursuant to 42 U.S.C. § 1983. The Court has supplemental jurisdiction over plaintiffs' two state law claims by way of 28 U.S.C. § 1367(a).

### B. Venue

Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(b).

### C. Standard of Review

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). See also

of failure to plead. As the parties are aware, the pre-trial document (which is part and parcel of the court's Pretrial Order) controls what facts and legal issues remain in the litigation. See Fed.R.Civ.P. 16(e); see also Mitchell v. Coffey County Hosp., 903 F.Supp. 1415, 1421 (D.Kan. 1995) ("The pretrial order supersedes the pleadings and controls the subsequent course of litigation."). If a claim or defense is not raised therein, it is lost. See Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1012 (11th Cir.1982) ("The failure to include an affirmative defense in the answer or have it included in the pre-trial order of the district court, which supersedes the pleadings, will normally result in waiver of the defense."); see also Funding Sys. Leasing Corp. v. Pugh, 530 F.2d 91, 96 (5th Cir.1976) ("When the defendant has waived his affirmative defense by failing to allege it in his answer, or have it included in a pre-trial order of the district court that supersedes the pleadings, he cannot revive the defense in a memorandum in support of a motion for summary judgment.").

Based on the foregoing, the court finds that the merits of the plaintiffs' physical modification claim should be considered on summary judgment. In making this finding, the court notes that the defendants will not be prejudiced by the court's decision to allow plaintiffs to proceed with this claim—it is apparent from the record that defendants performed discovery on this claim and that they are fully prepared to argue its merits.

*Adickes v. S.H. Kress, Inc.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). All evidence must be viewed in the light most favorable to the nonmoving party. *Alphin v. Sears, Roebuck & Co.,* 940 F.2d 1497, 1500 (11th Cir.1991); *Langston v. ACT,* 890 F.2d 380, 383 (11th Cir.1989). In ruling on a motion for summary judgment, the function of the court is not to "weigh the evidence and determine the truth of the matter but to determine whether there is an issue for trial." *Anderson v. Liberty Lobby,* 477 U.S. 242, 242–43, 106 S.Ct. 2505, 2505–07, 91 L.Ed.2d 202 (1986).

The standard for awarding summary judgment is the same as that for a directed verdict: "the trial judge must grant [the motion] if, under governing law, there can be but one reasonable conclusion as to the verdict." *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996). To avoid an adverse ruling on a motion for summary judgment, "the nonmoving party must provide more than a mere scintilla of evidence." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1526 (11th Cir.1997). "[T]here must be a substantial conflict in evidence to support a jury question." *Id.* (quoting *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989)).

### III. FACTUAL BACKGROUND

Most of the facts pertinent to defendants' motion for summary judgment are undisputed by the parties. Where there is any discrepancy in the record, the court views the evidence in the light most favorable to plaintiffs, the non-movants.[5]

#### A. *Background to the Suicide*

At 2:46 p.m. on October 17, 1994, Alabama State Trooper J.G. ("Jimmy") Clark, III responded to a two-car accident near the intersection of Clarke County Roads 3 and 16. The accident occurred approximately fifteen minutes before his arrival. No one was in-

jured but Vinson, the driver of one of the vehicles, was arrested for DUI after he failed the Alcho–sensor field test. Trooper Clark transported Vinson to the Clarke County Jail in Grove Hill, Alabama. Upon arriving at the jail at 3:41 p.m., Trooper Clark directed Vinson to a room where he asked Vinson to take the Intoxilyzer test. Vinson refused the test and also declined to make any statements for the Sobriety Examination Report. Vinson was subsequently booked and processed at 4:02 p.m. by the jailer, Donald Bradford, a non-deputized employee of the Clarke County Sheriff's Department. Vinson placed a phone call to his wife, Nettie Vinson, sometime between 4:02 p.m. and 4:10 p.m. Between 4:10 p.m. and 4:15 p.m., Vinson was placed in jail cell No. 5 by jailer Bradford. Vinson was the only person in cell No. 5.

After receiving the phone call from her husband, Nettie Vinson decided to go see him at the jail. She arrived at Clarke County Sheriff's Department at approximately 4:45 p.m. Jailer Bradford and Mrs. Vinson walked back towards Vinson's cell. Upon peering into the cell and seeing Vinson's body hanging awkwardly from some jail bars at the rear of the cell, Bradford called for help. In response to Bradford's call, Lieutenant Buster Hough brought the master keys, unlocked the door, and cut Vinson down. An ambulance was called, as well as the coroner and the Alabama Bureau of Investigation. After examining the body, the coroner pronounced Vinson dead. Laboratory tests performed during an autopsy revealed that Vinson's blood contained .205 percent alcohol (well over the maximum of .1 percent allowed under the Alabama DUI law) at the time the autopsy was conducted. Approximately 30 minutes elapsed between the time that Vinson was placed in cell No. 5 and the time that his body was discovered.

#### B. *Jail Cell No. 5*

Jail cell No. 5 is one of six cells on the ground floor of the jail facility. If looking

5. In considering a motion for summary judgment, the Court views "the evidence and all inferences arising therefrom in the light most favorable to the nonmoving party." *Young v.*

*City of Augusta,* 59 F.3d 1160, 1163 n. 4 (11th Cir.1995). Therefore, the "facts" as stated here are not necessarily those that would be found by a jury at trial.

from the jailers' office down the hallway off which these cells are located, cell No. 5 is the last one on the right. The cell is not of typical construction. The front wall is solid block, except for the steel door which has a hatch designed to permit a food tray to be passed to an occupant. The side walls, like the front wall, are constructed of solid block. It is the rear of the cell that is lined with jail bars running from the floor to the ceiling. Along the other side of the jail bars is a narrow hallway that runs to a galley which was no longer in use at the time of Vinson's suicide. It is unclear from the evidence presented exactly where on the jail bars Vinson attached the improvised noose. The jail facility does not have video surveillance equipment for the monitoring of inmates.

## C. *The Personnel In Charge of the Jail*

The Sheriff of Clarke County at the time of Vinson's death was Jack Day; he took that office only seventeen days before Vinson died. Day, however, served as chief deputy from September, 1979 until the day he became sheriff, October 1, 1994. He was not present at the jail during any part of the incident. Sheriff Day was responsible for implementing the "Policy and Procedure Directive: Admission of Inmates" (hereinafter "Directive") which he issued on October 1, 1994. Entry number five of that manual reads: "Intoxicated inmates should not be placed in a cell by themselves; rather, they should be placed in a cell with other inmates so that they can be observed." (Pls.' Ex. H at 2). The Directive was the only written instruction provided to Sheriff's Department employees on the subject of intoxicated inmates. At his deposition, Sheriff Day testified that he could not recall whether he gave additional oral instructions to Bradford or any other jail employee on the care of intoxicated inmates. (*See* Day Dep. at 57–58).

Jailer Bradford knew of and understood the Directive prior to Vinson's death. He knew that ¶ 5 of the Directive was designed for the safety of inebriated inmates. He also knew that Vinson was intoxicated when he placed Vinson in cell No. 5. Bradford did not

follow the Directive when he placed Vinson in that cell. Instead of placing him in a cell with other inmates, Bradford placed Vinson in cell No. 5 by himself. Bradford claims that he placed Vinson there so that he could watch him better. (*See* Bradford Dep. at 31). Cell No. 5 is located on the first floor of the two-story jail facility—the same level as the jailer office. However, a jailer cannot see into cell No. 5 when sitting at the jailer's desk. Bradford testified that, although he normally makes rounds through the facility every 30 to 45 minutes to check on the status of the inmates, he did not see Vinson on rounds because Vinson had only been there a short time before his death. (*See* Bradford Dep. at 17, 33).

Bradford testified that Vinson did not seem depressed during the booking process, nor did he threaten harm to himself or others. (*See id.* at 43–47). Likewise, Nettie Vinson testified that Vinson did not sound upset or distraught during the phone conversation referenced above. (*See* N. Vinson Dep. at 25). Plaintiffs have not presented any evidence that the defendants had any subjective knowledge of Vinson's intention to commit suicide or otherwise harm himself.

## D. *The Previous Suicide of Eddie Hale*

The defendants knew that approximately one year before Vinson's death, another detainee—Eddie Hale—had committed suicide in the very same cell where Vinson died. Hale, too, was placed alone in cell No. 5. It is not clear from the evidence submitted by the parties whether Hale was intoxicated at the time he died. After Hale's death, Sheriff Day knew that a suicide could happen again at the jail and that some measures for suicide prevention needed to be taken; however, no changes were made until after Vinson's suicide. In fact, Sheriff Day did not inspect cell No. 5 after Hale's suicide to determine whether any modifications could be made to prevent future inmate suicide attempts, nor did he direct anyone else to make such an inspection.

## E. *Miscellaneous Background Information*

Unlike many jail systems which screen all incoming detainees for physical ailments and

mental problems, including suicidal tendencies, it appears from the evidence submitted that there has never been such a policy or practice at Clarke County Jail. In addition, the plaintiffs have submitted expert deposition testimony that intoxicated detainees like Vinson are more likely to attempt suicide than detainees who are not intoxicated.

## IV. PLAINTIFFS' FEDERAL CLAIMS

### A. *The Federal Right at Issue*

■ Before proceeding further, it is necessary to identify the particular federal right upon which plaintiffs' § 1983 claims are based. This identification is necessary because Title 42 U.S.C. § 1983 is not itself a source of federal rights, but, rather, merely provides a private cause of action for violations of federal rights that are conferred elsewhere. *See Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir.1996).[6] Therefore, prior to addressing plaintiffs' § 1983 claims, the court must determine which of Vinson's constitutional rights was allegedly violated by the defendants.

■ Here, plaintiffs claim that the defendants violated Vinson's constitutional rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment.[7] Vinson was a pretrial detainee. Technically, a pretrial detainee is not protected by the Eighth Amendment's prohibition against cruel and unusual punishment because that amendment applies only to post-trial convicts. *See Belcher v. City of Foley*, 30 F.3d 1390 (11th Cir.1994). Instead, it is the Due Process Clause of the Fourteenth Amendment that protects pretrial de-

tainees. *See Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 2983, 77 L.Ed.2d 605 (1983). In this Circuit, however, it has been held that "in regard to providing pretrial detainees with such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the eighth amendment to convicted persons." *Belcher*, 30 F.3d at 1396 (quoting *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir.1985)); *cf. Hare v. City of Corinth*, 74 F.3d 633, 649 (5th Cir.1996) ("That pretrial detainees may have more protections or rights in general, however, does not mean that they are entitled to greater protection of rights shared in common with convicted inmates."). Accordingly, the court will utilize Eighth Amendment analysis in addressing the plaintiffs' § 1983 claims.

■ The Eighth Amendment proscribes the infliction of cruel and unusual punishment. U.S. Const. amend. VIII. This prohibition extends beyond physically barbarous punishment and includes inhumane conditions of confinement. *See Ort v. White*, 813 F.2d 318, 321 (11th Cir.1987). Additionally, courts have found that an inmate's Eighth Amendment rights can be violated, *inter alia*, when he encounters deliberate indifference to his serious psychological or medical needs, including his proclivity for inflicting injury or death upon himself. *See, e.g., Belcher*, 30 F.3d at 1396 (citing *Estelle v. Gamble*, 429 U.S. 97, 103–05, 97 S.Ct. 285, 290–92, 50 L.Ed.2d 251 (1976)).

■ There are two essential components to an Eighth Amendment claim brought against an individual: one objective, the oth-

---

6. In a § 1983 action, a plaintiff must show that the constitutional deprivation was caused by a person or persons acting under the color of state law. *See Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir.1998). There is no question that all defendants were acting under the color of Alabama law. Counsel for defendants has not suggested otherwise.

7. Plaintiffs have also alleged a violation of the Fourth Amendment. Complaint ¶ 1. In making this allegation, however, plaintiffs have failed to

articulate any specific claim stemming from the Fourth Amendment. In fact, the only mention of the amendment is the cursory reference in the complaint stating that plaintiff is suing under the Fourth Amendment. Because the Fourth Amendment is not relevant to the disposition of the case and because a claim pursuant to that amendment has not been properly presented, the court will disregard plaintiffs' reference to the Fourth Amendment.

er subjective. *See Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 2481–82, 125 L.Ed.2d 22 (1993) (noting that, on remand, the plaintiff would have "to prove both the subjective and objective elements necessary to prove an Eighth Amendment violation"). First, the alleged deprivation must be objectively serious. *See Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 1976–77, 128 L.Ed.2d 811 (1994). For a claim based on failure to prevent harm, it must be shown that the inmate was incarcerated in conditions posing a "substantial risk of serious harm". *Id.*

 The second, subjective component of the analysis requires that the inmate caretaker must have had a sufficiently culpable state of mind at the time of the alleged violation. In prison-condition cases like this one, the required state of mind is deliberate indifference to inmate health or safety. *See id.* In defining "deliberate indifference" in this context, the Supreme Court has determined that "a prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. Mere negligence does not rise to the level of deliberate indifference. *See id.* at 835. The Supreme Court has equated deliberate indifference in this context with recklessness. *See id.*

 It is important to note that connotations of the term "deliberate indifference" vary depending on whether the Eighth Amendment claim is asserted against an individual or a municipality. *See id.* at 840–41. The query with respect to individuals such as defendants Day and Bradford is whether they were "deliberately indifferent" to a known "substantial risk" that a detainee would take his own life. *See id.* at 837. By contrast, for municipalities such as Clarke County, "deliberate indifference" must be measured under an objective approach that

does not account for actual disregard of known risks. *See id.* at 841. The use of an objective standard is necessary here because it is not possible for a municipality, an artificial entity, to have subjective intentions. *See id.* Under the objective approach, the inquiry is whether there were substantial risks present which were "so obvious" that the municipality "can reasonably be said to have been deliberately indifferent to the need." *See City of Canton v. Harris,* 489 U.S. 378, 396, 109 S.Ct. 1197, 1208–09, 103 L.Ed.2d 412 (1989).

### B. *The Specific Claims*

1. *The failure of Clarke County and Sheriff Day properly to train jailer Bradford amounted to deliberate indifference to Vinson's rights under the U.S. Constitution.*

### a. The liability of Clarke County

 Plaintiffs assert a § 1983 claim against defendant Clarke County for allegedly failing to train jail personnel properly in the care of intoxicated inmates. In the landmark case of *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the United States Supreme Court found that municipalities—a term which encompasses counties—are subject to suits for damages under § 1983.[8] In making this finding, the Court held that municipalities are not entitled to Eleventh Amendment immunity or qualified immunity. *See Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980). Qualifying its holding somewhat, the Supreme Court made clear that a county may not be held liable for a § 1983 violation unless the county has a policy or custom which caused the constitutional deprivation: "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is

---

8. Municipalities, however, are not subject to claims for punitive damages. *See City of New-* *port v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981).

responsible under § 1983." *Monell*, 436 U.S. at 694.[9] Accordingly, for § 1983 liability to attach in this case, there must be a causal connection between the county's responsibilities and the injury suffered by plaintiffs' decedent. *See id.* at 690. The causation requirement is met if the municipal policy is the moving force of the constitutional violation. *See id.* at 694. In assessing whether a county can be liable under § 1983, "[a] court's task is to 'identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue.'" *McMillian v. Monroe County*, 520 U.S. 781, ——, 117 S.Ct. 1734, 1736, 138 L.Ed.2d 1 (1997) (quoting *Jett v. Dallas Ind. Sch. Dist.*, 491 U.S. 701, 737, 109 S.Ct. 2702, 2723–24, 105 L.Ed.2d 598 (1989)). Courts are to look to state law to determine who is a policymaker with respect to a particular action or decision. *See Jett*, 491 U.S. at 737 (superseded by statute on other grounds).

▇▇▇▇▇ Alabama law defines a county sheriff as a state officer rather than a county officer or employee. *See* Ala. Const. Art. V, § 112 (listing county sheriffs as members of the state's executive department); *see also Parker v. Amerson*, 519 So.2d 442 (Ala.1987) ("A sheriff is an executive officer of the State of Alabama[.]").[10] Because of this fact, there is an issue as to whether an Alabama sheriff can ever be said to be a county policymaker for the county where he works. The determination of whether an official is a final policymaker for a division of government generally depends on the particular area or issue under consideration. *See McMillian*, 520 U.S. at ——, 117 S.Ct. at 1737 ("Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government in a particular area, or on a particular issue."). In this context, however, the Eleventh Circuit has recently made clear that "Alabama sheriffs are not county policymakers in their daily management of county jails." *Turquitt*, 137 F.3d at 1292. Accordingly, Clarke County cannot be held liable for Sheriff Day's alleged failure to train jailer Bedford. For § 1983 liability to attach to a county, the policy at issue must have been made by a person who exercises

---

9. A well-recognized corollary is that a county cannot be held vicariously liable for the acts of its employees. *See Monell*, 436 U.S. at 691. For liability to attach to a county, the county must have had a policy or custom which resulted in usurpation of a person's constitutional rights. Thus, even if the sheriff and the jailers could be seen as employees of the county rather than the state, the county would not be liable under a pure theory of respondeat superior for any wrongful acts committed by members of the Sheriff's Department. *Cf. Pembaur v. Cincinnati*, 475 U.S. 469, 478, 106 S.Ct. 1292, 1297–98, 89 L.Ed.2d 452 (1986) (noting that a local governmental unit cannot be found liable under § 1983 "by application of the doctrine of respondeat superior.").

Additionally, it is the law in this Circuit that "[a]lthough the acts or omissions of no one employee may violate an individual's constitutional rights, the combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir.1985) (quoting *Garcia v. Salt Lake County*, 768 F.2d 303, 310 (10th Cir.1985)).

10. The same is true for sheriffs deputies and jailers. Alabama courts have repeatedly held that a deputy is a state officer who is entitled to the same immunities enjoyed by a sheriff. *See, e.g., Alexander v. Hatfield*, 652 So.2d 1142 (Ala. 1994) (holding that deputies have the same immunity as sheriffs because a deputy is but a legal extension of the sheriff—his acts are the acts of the sheriff). A jailer is no different. He is an employee of the state (he is hired by the Sheriff's Department) and a legal extension of the sheriff; he helps carry out the statutory duties assigned to sheriffs. Therefore, a jailer is entitled those same immunities. *See, e.g., Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir.1997) ("Alabama jailers are state officials entitled to Eleventh Amendment immunity when sued in their official capacities[.]").

The court recognizes that the law in this area is confusing, largely because each state has different rules regarding the status of sheriffs departments. In states such as Georgia and Florida a sheriff is deemed an agent of the county rather than an agent of the state, *see Vineyard v. County of Murray*, 990 F.2d 1207 (11th Cir.1993) (Georgia) and *Schmelz v. Monroe County*, 954 F.2d 1540 (11th Cir.1992) (Florida), while in other states like Alabama, the law declares sheriffs to be agents of the state, not of the county.

final authority *on behalf of* the county with respect to that policy. *See McMillian,* —— U.S. at ——, 117 S.Ct. at 1736. Alabama law, however, clearly demonstrates that sheriffs possess only state policymaking authority when running the day-to-day affairs of a jail. *See Turquitt,* 137 F.3d at 1291–92. Therefore, defendants' summary judgment motion is due to be, and hereby is, **GRANTED in part,** insofar as it pertains to the plaintiffs' § 1983 failure to train claim against Clarke County.

### b. The liability of Sheriff Day in his individual capacity

As stated earlier, plaintiffs' only claim against Sheriff Day (in his individual and official capacities) alleges that he was deliberately indifferent to Vinson's constitutional right to health and safety because he failed to train his subordinates properly in the care of intoxicated inmates. To succeed on this claim, plaintiffs must to show that Sheriff Day knew that Vinson and/or other similarly situated inmates faced a substantial risk of serious harm because of inadequately trained jail personnel, but disregarded that risk by failing to take reasonable measures to abate it. *See Farmer,* 511 U.S. at 837. Plaintiffs must also show a causal connection between the sheriff's failure and the constitutional deprivation. *See Belcher,* 30 F.3d at 1396–97.[11]

■ The Supreme Court of the United States has held "that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73

L.Ed.2d 396 (1982). The *Harlow* case firmly established this doctrine of qualified immunity which, when properly invoked, protects government actors in their individual capacities from federal civil damage claims. *See id.; see also Tinney v. Shores,* 77 F.3d 378, 381 (11th Cir.1996); *Lassiter v. Alabama A & M University, Board of Trustees,* 28 F.3d 1146, 1149 (11th Cir.1994).[12] Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Qualified immunity is an affirmative defense that must be pled by a defendant. *See Harlow,* 457 U.S. at 815. The availability of qualified immunity is a question of law. *See Mitchell v. Forsyth,* 472 U.S. 511, 528, 105 S.Ct. 2806, 2816–17, 86 L.Ed.2d 411 (1985).

■ Defendants have asserted a qualified immunity defense in this case. To be eligible for qualified immunity, a defendant must first demonstrate that he was a public official acting within the scope of his discretionary authority. *See Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988). The Supreme Court has said that an action is discretionary rather than "ministerial" when the action at issue was "influence[d] by the decisionmaker's experiences, values, and emotions." *Harlow,* 457 U.S. at 816. Ministerial actions are those acts that do not require the exercise of independent thought or deliberation by the person taking the action. *See Kitchen v. CSX Transp., Inc.,* 6 F.3d 727, 732 (11th Cir.1993). The Eleventh Circuit has gone further by providing a concrete standard for determining whether an action is discretionary for purposes of applying the doctrine of qualified immunity. Qualified immunity is available to a government official— even if his actions appear to be ministerial in nature—so long as the official's actions " '(1)

---

11. This type of claim is often referred to as a supervisory liability claim. *See Dolihite v. Maughon,* 74 F.3d 1027, 1052 (11th Cir.), *cert. denied,* —— U.S. ——, 117 S.Ct. 185, 136 L.Ed.2d 123 (1996)

12. A state official may not assert the absolute immunity of the Eleventh Amendment as a defense to claims raised against him in his individ-

ual capacity. *See Hobbs v. Roberts,* 999 F.2d 1526, 1528 (11th Cir.1993) (citing *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 361–62, 116 L.Ed.2d 301 (1991)); *see also Kentucky v. Graham,* 473 U.S. 159, 166–67, 105 S.Ct. 3099, 3105–06, 87 L.Ed.2d 114 (1985).

were undertaken pursuant to the performance of his duties,' and '(2) were within the scope of his authority.' " *Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir.1994) (quoting *Rich,* 841 F.2d at 1564 (11th Cir.1988)). If the conduct at issue falls within this definition, then it is established that the official was acting within the scope of his discretionary authority. *See McCoy v. Webster,* 47 F.3d 404, 407 (11th Cir.1995).

▇ Applying *Jordan* to the present case, it is clear that both Sheriff Day and jailer Bradford were acting within the scope of their discretionary authority in relation to Vinson and the care of the general inmate population. Their action or inaction in response to the physical and mental needs of inmates was carried out in the performance of their duties and was within the scope of their authority.

▇ Since it has been determined that the acts of Sheriff Day and jailer Bradford were discretionary, the burden shifts to the plaintiffs to demonstrate that a reasonable official would have known that his conduct violated a clearly established constitutional right. *See McCoy,* 47 F.3d at 407. Whether the applicable law at issue can be deemed "clearly established" at the time of the challenged action is determined by reference to decisions of the United States Supreme Court, the applicable circuit of the United States Court of Appeals, and the highest court of the respective state. *See, e.g., D'Aguanno v. Gallagher,* 50 F.3d 877, 881 n. 6 (11th Cir.1995); *Courson v. McMillian,* 939 F.2d 1479, 1498 n. 32 (11th Cir.1991). Courts must judge the acts of a defendant claiming qualified immunity as against the law and facts at the time the defendant acted, and without the benefit of hindsight. *See Lassiter,* 28 F.3d at 1150. The relevant inquiry is "fact specific," *Rodgers v. Horsley,* 39 F.3d 308, 311 (11th Cir.1994), and the plaintiff

must point to a controlling case, decided before the events at issue, which establishes a constitutional violation on "materially similar" facts. *Lassiter,* 28 F.3d at 1150.[13] As emphasized in *Lassiter,* "pre-existing law must dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable, government agent that' what [he] is doing violates federal law *in the circumstances." Id.* (emphasis and parentheses in original); *see also Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Furthermore, in assessing qualified immunity in this case, the court notes that the "[l]aw is clearly established by holdings, not by inferences from language in opinions." *Belcher,* 30 F.3d at 1400.

▇ Qualified immunity is a separate and distinct inquiry from the merits of a plaintiff's claim. *See Lassiter,* 28 F.3d at 1151. This separate inquiry is due to the fact that qualified immunity flows from the old common law doctrine of sovereign immunity which provided governments and their agents exemptions from liability which existed on the merits. *See id.*

▇ To determine whether Sheriff Day is protected by qualified immunity from suit in his individual capacity, the key inquiry is whether, at the time of Vinson's death, it was clearly established law that his conduct—the alleged failure to train jail personnel in the care of intoxicated inmates—amounted to deliberate indifference to Vinson's right to health and safety. In addition to asserting that jail personnel were improperly trained from the beginning, plaintiffs also allege that the sheriff's failure to institute remedial training after the earlier suicide at Clarke County Jail further subjects him to liability. For purposes of ruling on this summary judgment motion, the court will accept as fact both the existence of the previous suicide

---

**13.** This court, as did the Eleventh Circuit in *Lassiter,* leaves open the question whether the words of a federal statute or federal constitutional provision could ever be specific enough to "clearly establish" the law applicable to a partic-

ular situation so as to overcome qualified immunity even in the absence of case law. Plaintiffs have made no attempt to state their § 1983 claims in such a manner.

and the sheriff's failure to take remedial action. In *Greason v. Kemp*, the Court of Appeals held, *inter alia*, that in certain circumstances the failure of a supervisory official to take institutional remedial action can amount to deliberate indifference. 891 F.2d at 838 (11th Cir.1990) (citing *City of Canton*, 489 U.S. at 390 n. 10 and *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1556 (11th Cir. 1989)).

 Plaintiffs have the burden of demonstrating that Sheriff Day's failure to train jail personnel amounted to a violation of clearly established law. *See Jordan v. Doe*, 38 F.3d 1559, 1565 (11th Cir.1994). If they fail to meet this burden, qualified immunity shields Sheriff Day from suit. In attempting to satisfy their burden, plaintiffs cite to only two cases. The first is *Belcher v. City of Foley*, 30 F.3d 1390 (11th Cir.1994). While *Belcher* does state that failure to train *can* amount to deliberate indifference under certain conditions, the final holding of the case is that the law, at the time of Mr. Belcher's death, did not clearly established that a sheriff is deliberately indifferent when he fails to train his jailers in the handling of suicidal inmates. *Id.* at 1397–98. The law has not changed since the *Belcher* decision and plaintiffs have not argued otherwise. The other case cited by plaintiffs, *Greason v. Kemp*, 891 F.2d 829 (11th Cir.1990), is inapposite, too. The relevant holdings in *Greason* are as follows: (1) that a *psychiatrist's* provision of grossly inadequate psychiatric care to an inmate can amount to deliberate indifference; and (2) that when prison personnel directly responsible for inmate care have subjective knowledge that an inmate has attempted or threatened suicide, but fail to take reasonable steps to prevent that inmate from committing suicide, they may be liable for deliberate indifference. *Id.* at 835–36. Contrary to plaintiffs' assertions, *Greason* does not stand for the proposition that a sheriff is deliberately indifferent when he fails to train

his jailers in the care of suicidal inmates. In fact, such an interpretation of *Greason* was expressly rejected by the Eleventh Circuit in *Belcher.* 30 F.3d at 1398.

Based on the foregoing, the court finds that defendants' motion for summary judgment is due to be, and hereby is, **GRANTED in part** as it relates to plaintiffs' § 1983 claim against Sheriff Day in his individual capacity for failure to train.

**c. The liability of Sheriff Day in his official capacity**

 For liability purposes, a suit against a public official in his official capacity is the same as a suit against the government entity he represents. *See McMillian*, 520 U.S. at —— n. 2, 117 S.Ct. at 1737 n. 2 (citing *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). As already discussed, Sheriff Day represented the state in his day-to-day management of the jail. *See Turquitt*, 137 F.3d at 1288. Accordingly, plaintiffs' claims against Sheriff Day in his official capacity must be construed as claims against the State of Alabama. Due to this fact, the court finds that the plaintiffs' claim against Sheriff Day in his official capacity must fail in light of the immunity protections afforded by the Eleventh Amendment.

 The defendants raise the Eleventh Amendment defense on page eleven of their Brief in Support of Summary Judgment.[14] The Eleventh Amendment provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The amendment has been construed to prohibit suits by citizens against their own states. *See generally Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890);

---

14. Even if defendants had not raised this defense, the court would consider Eleventh Amendment immunity *sua sponte* since sovereign immunity is considered tantamount to a jurisdictional

matter that can be raised at any stage of the litigation by the court or a party. *See Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945).

*see also Georgia Dep't of Human Resources v. Nash*, 915 F.2d 1482, 1486 n. 11 (11th Cir.1990). Eleventh Amendment doctrine, as it applies here, holds that a party may not sue a state official or employee in federal court if the suit is, in effect, one against the state.[15] *See Pennhurst*, 465 U.S. at 101 ("The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.'" (quoting *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350–51, 89 L.Ed. 389 (1945))). By definition, in an official capacity suit, the plaintiff seeks to recover from the entity which the official represents. Sheriff Day is a state official; thus, plaintiffs impermissibly seek to recover from the State of Alabama. *See McMillian*, 520 U.S. at —— n. 2, 117 S.Ct. at 1737 n. 2. Accordingly, plaintiffs' official capacity claim against Sheriff Day must fail due to the protections afforded by the Eleventh Amendment.[16] Therefore, defendants' motion for summary judgment is due to be, and hereby is, **GRANTED in part** as to plaintiffs' § 1983 claim against Sheriff Day in his official capacity.

2. *Clarke County has a policy of deliberate indifference to the rights of all detainees and/or all intoxicated pretrial detainees because it has never made physical modifications to the jail in an attempt to reduce the number of suicide attempts.*

Plaintiffs contend that Clarke County's alleged inattention to the physical facilities of the jail amounts to a policy of deliberate indifference to the collective rights of all detainees and/or all intoxicated pre-trial detainees. They argue that because the county has never made any efforts to (1) modify or replace the jail facility so as to reduce or eliminate the implements which permit a person to hang himself or (2) install video monitoring equipment, jail detainees are unconstitutionally subjected to dangerous conditions in violation of the prohibition against cruel and unusual punishment.

■ According to Alabama Code § 11–14–10 (1975), each county has a duty to "erect courthouses, jails and hospitals"; and, "[e]ach county within the state shall be required to maintain a jail within their county." Courts have clarified that "[t]he duty to 'maintain a jail' under § 11–14–10 is merely the duty to keep the 'jail and all equipment therein in a state of repair and to preserve it from failure or decline.'" *Turquitt*, 137 F.3d at 1290 (quoting *Keeton v. Fayette County*, 558 So.2d 884, 886 (1989)). The duties of the county in this respect are limited to funding and providing facilities to house the jail, and do not extend to the daily operation of the jail or to the supervision of inmates. *See Turquitt* 137 F.3d at 1289; *see also Stark v. Madison County*, 678 So.2d 787, 787 (Ala. Civ.App.1996) (finding a county's duty to be limited to providing and preserving the physical plant of a jail, and asserting that the daily operations and routine maintenance of the jail are the sheriff's responsibility).

■ Although a county's duties with respect to its jail are limited, the county can still face liability for certain defects in its jail

---

**15.** The three basic exceptions to the applicability of the Eleventh Amendment do not apply in this case. *Cf. Seminole Tribe of Florida v. Florida*, 11 F.3d 1016, 1021 (11th Cir.1994) (listing the three basic exceptions to Eleventh Amendment immunity), *aff'd by* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). Congress has not abrogated Eleventh Amendment immunity in § 1983 suits. *See Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979). Furthermore, Alabama has not waived its immunity; in fact, immunity is expressly proclaimed in the Alabama Constitution. Art. I, § 14. (1901). Finally, this is not a suit for prospective injunctive relief against a state official. *See Pennhurst State*

*Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102, 104 S.Ct. 900, 909, 79 L.Ed.2d 67 (1983) (discussing *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

**16.** Furthermore, the court notes that, in *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the Supreme Court held that neither a state nor one of its officials is a "person" subject to suit under 42 U.S.C. § 1983. Therefore, according to *Will*, Day is not a proper party in his official capacity on the § 1983 claims.

facilities. *Cf. Turquitt,* 137 F.3d at 1289 ("We recognize that Alabama counties possess some duties with respect to county jails."). However, regardless of whether such defects would constitute inhumane or dangerous conditions of confinement, no liability can result in the absence of deliberate indifference to those conditions. *See Tittle v. Jefferson County Comm'n,* 10 F.3d 1535, 1539 (11th Cir.1994) (finding that failure to prove deliberate indifference in this context would be fatal to a plaintiff's case). Indeed, pursuant to the applicable Eleventh Circuit and Supreme Court case law, a county may face § 1983 liability in a conditions of confinement case only where there is adequate proof that the county exhibited a deliberate indifference to the substantial risks associated with unreasonably unsafe jail or prison conditions. *See, e.g., Farmer,* 511 U.S. at 834 (discussing the nature of proof required to establish an Eighth Amendment violation); *cf. Edwards v. Gilbert,* 867 F.2d 1271, 1274–75 (11th Cir.1989) ("In a prisoner suicide case, to prevail under section 1983 for violation of substantive rights, under either the [E]ighth or [F]ourteenth [A]mendments, the plaintiff must show that the jail official displayed 'deliberate indifference' to the prisoner's taking of his own life.").

■ In assessing a county's liability in this context, the court must conduct a two-pronged inquiry: (1) was the county deliberately indifferent to the substantial risks associated with the contested jail conditions; and (2) can the contested conditions be deemed objectively unreasonable under the relevant case law. *Cf. Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 2481–82, 125 L.Ed.2d 22 (1993) (noting the two elements necessary to state a successful claim for an Eighth Amendment violation). A county can be found liable only where both questions yield positive answers. *See id.* Similarly, if the evidence presented on summary judgment indicates a genuine issue as to both questions, the county must proceed to trial. *Cf. Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986) (noting that, to survive summary judg-

ment, a non-movant must produce a sufficient showing on each essential element of his case).

■ As a preliminary matter, it is important to note that the court's inquiry into defendant Clarke County's alleged deliberate indifference cannot take the form of the traditional, subjective analysis as established in the governing case law. To demonstrate deliberate indifference under the subjective analysis, a defendant "must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw that inference." *Farmer,* 511 U.S. at 837. Proving such subjective awareness on the part of a governmental entity is not practical, and, therefore, it is necessary to apply a more awkward objective analysis to the deliberate indifference factor. *See id.* (recognizing the need for an objective analysis in claims against municipalities because "considerable conceptual difficulty would attend any search for the subjective state of mind of a governmental entity"). Under this objective approach to deliberate indifference, the court must consider whether the substantial risks associated with unreasonably unsafe conditions of confinement were "so obvious" that the county's policymakers "can reasonably be said to have been deliberately indifferent to the need." *Canton,* 489 U.S. at 396.

■ Although the Eleventh Circuit has yet to apply this objective approach in the context of a jail suicide case, the clear separation of responsibilities set forth in *Turquitt* makes it clear that a claim against a county for unsafe jail facilities can no longer be founded on the action or awareness of a sheriff or jailer. Therefore, the rule set forth in *Tittle,* which predicated § 1983 liability on actual awareness of an individual's suicidal tendencies, can no longer effectively be factored into the consideration of an Alabama county's liability. Because Alabama counties are not responsible for the day-to-day operation of their jails, but rather only for the physical jail facilities, counties have no need to familiarize themselves with the

needs of individual detainees. Thus, a county's liability in this context cannot be predicated on an alleged indifference to the needs of individual detainees. Rather, the liability of an Alabama county in this context can only properly be based on an indifference to the obvious needs of detainees in general, or of certain defined classes of detainees. *Cf. Simmons v. City of Philadelphia*, 947 F.2d 1042, 1070–71 (3d Cir.1991) (finding that liability could result from deliberate indifference to a group of potentially suicidal detainees). Accordingly, the court finds that, in jail suicide cases involving conditions of confinement, the appropriate inquiry is whether jail conditions and past events made it so obvious that suicide would result from the county's failure to modify its jail facilities that the county could be seen as deliberately indifferent to the interests of all detainees and/or intoxicated detainees.

■■■ With these background legal considerations established, the court can now proceed to consider the merits of the plaintiffs' conditions of confinement claim against Clarke County. Although the submissions and argument on the deliberate indifference issue are fairly insubstantial, plaintiffs appear to contend that the risk of suicide was made obvious by the earlier suicide of Eddie Hale in the same jail cell, by the continued presence of bars in that cell, and by the lack of video surveillance equipment in the jail. The Eleventh Circuit has, however, made clear that such a light degree of evidence is insufficient "to require the [c]ounty to presume that all persons imprisoned there are substantially likely to attempt suicide." *Tittle*, 10 F.3d at 1540 n. 6. Furthermore, even in light of plaintiffs' expert evidence regarding the suicide tendencies of intoxicated detainees, the court cannot find that the risk of suicide among the separate class of intoxicated detainees was *so obvious* as to present a genuine issue regarding Clarke County's alleged deliberate indifference. Clarke County is responsible only for providing jail facilities

and funding jail operations. Responsibility for monitoring detainees falls on the jailer and, ultimately, the sheriff. Because the county is entitled to place a reasonable degree of reliance on the sheriff's ability to monitor the jail, the court can imagine only a few situations where a class of detainees' risk of suicide would be *so obvious* as to require modification of jail facilities.[17] *Cf. Dolihite v. Maughon*, 74 F.3d 1027, 1054 (11th Cir.1996) (finding that the director of an adolescent care facility "could reasonably rely on subordinates to ensure that a child who was at risk of doing harm to himself would be placed on close or continuous observation or that other precautionary measures might be taken"). The facts of this case do not state one of those exceptional circumstances. Accordingly, the court finds that the plaintiff has failed to establish a genuine issue as to Clarke County's alleged deliberate indifference. Defendant's motion for summary judgment is, therefore, **GRANTED in part** with respect to plaintiffs' facilities-based § 1983 claim against Clarke County.

> 3. *Jailer Bradford, in failing to follow the Directive and keep proper watch, was deliberately indifferent to Vinson's right to health and safety.*

### a. The liability of Bradford in his individual capacity

The appropriate legal standard for evaluating the deliberate indifference claim against jailer Bradford in his individual capacity has already been discussed. *See supra* part IV.A. To succeed on this claim plaintiffs must show Bradford knew that Vinson faced a substantial risk of serious harm but disregarded that risk by failing to take reasonable measures to abate it. *Cf. Tittle*, 10 F.3d at 1539 ("Deliberate indifference, in the context of a jail suicide case, is whether a defendant was deliberately indifferent to an individual's mental condition and the likely consequences of that condition."). The court need not

---

**17.** For example, a county could not simply ignore serious increases in suicides which would tend to indicate that monitoring is insufficient.

Nor would a county be entitled to ignore needs or reasonable requests that had been made clear to its commissioners.

reach the merits of the plaintiffs' claim because the court finds that jailer Bradford is immune from suit.

 Bradford has raised the affirmative defense of qualified immunity. As already discussed, the key inquiry in assessing qualified immunity is whether, at the time of Vinson's death, it was clearly established law that Bradford's conduct amounted to deliberate indifference to Vinson's health and safety. It is true that "[w]here prison personnel directly responsible for inmate care have knowledge that an inmate has attempted, or even threatened, suicide, their failure to take steps to prevent that inmate from committing suicide can amount to deliberate indifference" for purposes of imposing personal liability under 42 U.S.C. § 1983. *Greason v. Kemp,* 891 F.2d 829, 835–36 (11th Cir.1990). However, plaintiffs have failed to cite a case holding that a jail worker like Bradford can be found deliberately indifferent when he or she does not have notice of suicide threats or previous suicide attempts by the inmate.[18] Indeed, the governing case law in this judicial circuit indicates that an inmate caretaker "cannot be liable under § 1983 for the suicide of a prisoner 'who never had threatened or attempted suicide and who had never been considered a suicide risk.' " *See Tittle,* 10 F.3d at 1540 (quoting *Edwards v. Gilbert,*

867 F.2d 1271, 1277 (11th Cir.1989)). The evidence presented conclusively shows that Bradford had no notice of Vinson's suicidal tendencies. Vinson never threatened suicide in Bradford's presence, and Bradford had no knowledge of any previous suicide attempts by Vinson.

 ▪The pertinent case law holds that, in regard to individual capacity § 1983 claims, it is not deliberate indifference for an inmate caretaker to fail to prevent a suicide absent subjective knowledge of an inmate's intent to kill himself. *See, e.g., Popham v. City of Talladega,* 908 F.2d 1561, 1564 (11th Cir. 1990); *Edwards v. Gilbert,* 867 F.2d 1271 (11th Cir.1989). Because plaintiffs have not satisfied their burden of showing that Bradford violated clearly established law, defendant Bradford is entitled to qualified immunity.[19] Therefore, defendants' motion for summary judgment is hereby **GRANTED in part** with respect to plaintiffs' § 1983 claims against Bradford in his individual capacity.

### b. The liability of jailer Bradford in his official capacity

 Under Alabama law, jailers, like sheriffs, are considered to be state officers for purposes of determining Eleventh Amendment immunity. *See Lancaster v.*

---

**18.** The plaintiffs bear the burden of demonstrating that the defendants violated clearly established law. *See McMillian v. Johnson,* 88 F.3d 1554, 1562 (11th Cir.), *modified by* 101 F.3d 1363 (11th Cir.1996). In an attempt to meet this burden, plaintiffs have cited only one case—*Belcher,* 30 F.3d 1390—for the proposition that it was clearly established law, at the time of the suicide, that jailer Bradford was deliberately indifferent to Vinson's constitutional rights. Plaintiffs' citation of *Belcher* as support for this proposition is erroneous. While, as plaintiffs point out, *Belcher* does state that the failure to train can amount to deliberate indifference under certain conditions, it does not hold that a jailer is deliberately indifferent to an inmate's constitutional rights when he lacks subjective knowledge of the inmate's intent to harm himself.

**19.** Plaintiffs argue that Bradford's disregard of the Directive, which states that intoxicated inmates should be placed in a cell with other occupants, evidences deliberate indifference to Vinson's constitutional rights. The United States

Supreme Court and the Eleventh Circuit have rejected such arguments. In *Davis v. Scherer,* 468 U.S. 183, 194, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984), the Court held that "[state or federal] [o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision." This is the rule even if the officials "violat[e] the clear command of a statute or regulation—of federal or state law." *Id.* at 194 n. 12. It is only where the "regulation itself or the laws that authorized its promulgation create a cause of action for damages or provide the basis for an action brought under § 1983" that immunity might be forfeited. *Id.* In this lawsuit, the bases of plaintiffs' cause of action are the Eighth and Fourteenth Amendments, not a statute or regulation. *See also Dolihite v. Maughon,* 74 F.3d 1027, 1044 (11th Cir.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 185, 136 L.Ed.2d 123 (1996); *Edwards,* 867 F.2d at 1276–77.

*Monroe County*, 116 F.3d 1419, 1429–30 (11th Cir.1997). Accordingly, plaintiffs' claims against Bradford in his official capacity constitute impermissible claims against the State of Alabama. Because plaintiffs' § 1983 claim against jailer Bradford in his official capacity cannot stand under the Eleventh Amendment, the court finds that the defendants' motion for summary judgment is due to be, and hereby is, **GRANTED in part** with respect to that claim.

## V. PLAINTIFFS' STATE LAW CLAIMS

In Count II of the complaint, plaintiffs seek to recover money damages under Alabama law for Vinson's pain and suffering which allegedly resulted from the wantonness and negligence of the defendants in caring for inmate Vinson. In Count III, plaintiffs set forth a claim for relief under Alabama's wrongful death statute, Ala.Code § 6–5–410. These claims will be considered against Clarke County and the individual defendants in turn. The court notes at this point that the law governing plaintiffs' state law claims is wholly different from that governing the federal law claims.

### A. *Clarke County*[20]

 For both the negligence claim and the wrongful death claim, plaintiffs must produce sufficient evidence as to the existence of the basic elements of a tort claim: duty, breach, causation, and damages. Under Alabama law, a county is responsible for only the erection and maintenance of the county jail. *See* Ala.Code, § 11–14–10; *see also Turquitt* 137 F.3d at 1289–90. It is the sheriff who is responsible for the care of inmates and the charge of the jail. *See King v. Colbert County*, 620 So.2d 623, 625 (Ala. 1993). Furthermore, a sheriff is not considered an employee of the county for purposes of imposing vicarious liability upon the county. *See id.* (citing *Parker v. Amerson*, 519 So.2d 442 (Ala.1987)). Thus, it is not possi-

ble for an Alabama county to act negligently or wantonly in regard to the oversight of inmates in the jail—i.e., there is no duty that the county can breach insofar as the daily management of the jail and care of inmates is concerned. *Cf. Turquitt*, 137 F.3d at 1290 ("Where a duty is specifically placed upon the sheriff, that duty is 'statutorily reserved' for the sheriff, and the county has no liability for the sheriff's failure to perform it."). Therefore, plaintiffs' state law claims against the county can only proceed, if at all, under a theory of negligent construction or maintenance of the jail facility.

In *King*, the Alabama Supreme Court held that " § 11–14–10 places an affirmative duty upon the County to maintain the jail and keep it in a state of repair." *Id.* In that case, a prisoner alleged that he had received an electric shock as a result of Colbert County's negligence in maintaining the jail. Because of this statutory affirmative duty, the court concluded that the trial court erred in granting the county's motion for summary judgment. *Id.*

 Applying *King* to the present case, it is clear that Clarke County owed Vinson, along with all other detainees, a duty to maintain the jail and keep it in a reasonably safe state of repair. To survive summary judgment, however, plaintiffs must produce evidence to show that the county breached that duty, and that its breach was the proximate cause of Vinson's suicide. *See id.* at 625–26. Although the plaintiffs may have produced sufficient evidence to create a genuine issue as to the county's breach of its statutory duty, plaintiffs have failed to establish proximate causation.

 Under Alabama law, suicide generally functions as an efficient intervening cause which serves to break all causal connections between the alleged wrongful or negligent acts and the death at issue. *See Gilmore v. Shell Oil Co.*, 613 So.2d 1272, 1275–76 (Ala.

**20.** Under Alabama law, a county is subject to suit. Alabama Code § 11–1–2 (1975) removes the shield of sovereign immunity for suits against counties and county commissioners in their official capacities. *See also Cook v. County of St. Clair*, 384 So.2d 1 (Ala.1980).

1993). Consequently, a defendant cannot be found liable for the suicide of another unless "the relationship between a decedent and a defendant is such that we expect the defendant to take reasonable steps to protect the decedent from deliberate and self-destructive injury." *Id.* at 1278. Although the Alabama Supreme Court has indicated that such a relationship may exist "in a custodial situation where suicide is foreseeable [, typically in the case of] hospitals or prisons[,]" *id.* at 1276 (emphasis in original), Clarke County was not Vinson's actual custodian, and certainly was not in a position to assess his proclivity for suicide. Rather, Clarke County was merely the supplier of the jail facilities in which Vinson was housed. *See Stark,* 678 So.2d at 788 (noting that an Alabama county's duty is merely "to provide adequate facilities and equipment to house the jail and to provide funding for certain aspects of operating the jail"). In this limited capacity, Clarke County had no control over jail operations or custodial supervision. *See Turquitt,* 137 F.3d at 1290 (finding that the governing Alabama statutes "are entirely consistent with the counties' limited role in building and funding the jails and do not imply or impart any control over the jails' operation"). The duty of monitoring detainees and assessing their tendency for suicide falls on either the county sheriff or jailer. *See id.* at 1291 ("The sheriffs, on the other hand, have full responsibility for daily management of the jails, including inmate supervision, and they are not subject to county oversight in their performance of this responsibility."). Consequently, the custodial relationship to which the court was referring can only be found between Vinson and either the sheriff or jailer. *See id.* at 1288 ("Alabama law provides that it is the sheriff who has the duty to ensure that inmates do not come to harm[.]"); *cf. Bruzga v. PMR Architects, P.C.,* 141 N.H. 756, 758, 693 A.2d 401, 403 (1997) ("Fundamental to the [custodial relationship] exception is a preexisting duty of care and protection imposed on the defendants either because they have 'actual physical control of, and substantial or total control over, an individual' or [because of special training.]" (quoting *McLaughlin v. Sullivan,* 123 N.H. 335, 461 A.2d 123, 126 (1983))). As the Alabama Supreme Court has stated in a related context, "[t]he degree of certainty that suicides will occur is based not primarily upon prison design, but upon the ability of the jailer to recognize those inmates who exhibit suicidal tendencies and upon the subsequent interaction between inmate and jailer." *Tittle v. Giattina, Fisher & Co. Architects, Inc.,* 597 So.2d 679, 681 (Ala.1992). Alabama counties do not participate in the jailer's or sheriff's duties in this area. *See Turquitt,* 137 F.3d at 1290 ("the authority of the sheriff over operation of the jail is 'totally independent' of the county commission").

■ Because Clarke County cannot be seen as Vinson's custodian at the time of his suicide, the court finds that the plaintiffs' state law claims against the county must fail. Although the Alabama Supreme Court has indicated that liability for suicide might result in one other circumstance, namely where a defendant created an uncontrollable impulse in another which led to suicide, *see Gilmore,* 613 So.2d at 1276, that situation is not alleged here.[21] Accordingly, the court finds that Clarke County cannot be found to have proximate caused Vinson's suicide.[22] Defendants' motion for summary judgment

21. Where there is neither a custodial relationship which would indicate the foreseeability of suicide, or a claim of irresistible impulse, Alabama law provides that "suicide . . . is unforeseeable as a matter of law, and civil liability will not be imposed upon a defendant for a decedent's suicide." *Gilmore,* 613 So.2d at 1278.

22. This is not to say that a county could never be found to have proximately caused a detainee's suicide. For example, if suicide resulted from sufficiently unsanitary or inhumane conditions at a county jail, a claim for uncontrollable impulse suicide could present itself Furthermore, if a county voluntarily undertook a duty of housing detainees whose suicide risk was legally foreseeable, unsafe jail conditions could give rise to potential liability. *Cf. Keeton v. Fayette County,* 558 So.2d 884, 887 (Ala.1989) (finding that a county could be liable for the suicide death of a juvenile inmate where county had voluntarily undertaken to provide cells for juvenile detainees and where the foreseeability of juvenile suicide was established as a matter of law).

is, therefore, due to be, and hereby is, **GRANTED in part** as to the plaintiffs' state law claims against Clarke County.

### B. *Sheriff Day and jailer Bradford*

 Day and Bradford claim that they are insulated from suit on plaintiffs' state law claims by the doctrine of sovereign immunity as enunciated in Ala. Const. art. 1, § 14 (1901). This constitutional provision states that "the State of Alabama shall never be made a defendant in any court of law or equity." [23] Although this provision appears on its face to cover only the state itself, the sovereign immunity protections have been construed by courts to extend to employees of the state, including county sheriffs and jailers. *See Alexander v. Hatfield,* 652 So.2d 1142, 1144 (Ala.1994) ("State officers and employees, in their official capacities and individually, also are absolutely immune from suit when the action is, in effect, one against the State."); *see also Lancaster,* 116 F.3d at 1431 (finding an Alabama county jailer to be entitled to the same sovereign immunity protections as are afforded to sheriffs and deputy sheriffs); *Parker v. Amerson,* 519 So.2d 442, 442–43 (Ala.1987) (finding Alabama sheriffs to be immune from suit in all but five limited circumstances). These sovereign immunity protections apply to state law claims against state officials in both their official and unofficial capacities. *See Tinney v. Shores,* 77 F.3d 378, 383 (11th Cir.1996).

 The only exceptions to the sovereign immunity provided to Alabama state officers apply to those actions that are brought:

(1) to compel him to perform his duties, (2) to compel him to perform ministerial acts, (3) to enjoin him from enforcing unconstitutional laws, (4) to enjoin him from acting in bad faith, fraudulently, beyond his authority, or under mistaken interpretation of the law, or (5) to seek construction of a statute under the Declaratory Judgment

Act if he is a necessary party for the construction of a statute.

*Parker,* 519 So.2d at 442–43. In the present case, the plaintiffs do not seek an injunction, a mandamus order, or a declaratory judgment, but rather are suing only for monetary damages. Accordingly, none of the *Parker* exceptions apply, and this court must find the defendants immune from suit on plaintiffs' state law claims. *See, e.g., Lancaster,* 116 F.3d at 1429–31 (finding both a county sheriff and jailer to be immune from suit on a plaintiff's state law claims). Accordingly, defendants' summary judgment motion is due to be, and hereby is, **GRANTED in part** as to the plaintiffs' state law claims against Sheriff Day and jailer Bradford in both their individual and official capacities.

### VI. CONCLUSION

Based on the foregoing, the court finds that the defendants are entitled to summary judgment against all of the plaintiffs' claims. Accordingly, defendants' Motion for Summary Judgment is hereby **GRANTED.**

---

**23.** The sovereign immunity protection of Art. 1, § 14 is akin to a jurisdictional matter such that it is non-waivable and can be raised *sua sponte* by the court. *See Boaz Nursing Home v. Recovery Inns of Am.,* 289 Ala. 144, 266 So.2d 588 (1972).